## OHIO TAX CASES.

### OHIO RIVER AND WESTERN RAILWAY COMPANY *v.* DITTEY ET AL., AS THE TAX COMMISSION OF OHIO.

### MARIETTA, COLUMBUS AND CLEVELAND RAILROAD COMPANY *v.* CREAMER ET AL., AS THE TAX COMMISSION OF OHIO.

APPEALS FROM THE DISTRICT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF OHIO.

Nos. 642, 643. Argued January 7, 1914.—Decided February 24, 1914.

Where the Federal jurisdiction does not depend upon diversity of citizenship but on Federal questions presented by the record, it extends to the determination of all questions presented irrespective of the disposition made of the Federal questions.

Where the statute specifically makes the tax a lien upon real estate and the bill alleges that enforcement of penalties would work irreparable injury, equity jurisdiction is properly invoked.

The Federal court may examine the opinion of the state court as well as the syllabus to ascertain the scope of the decision, notwithstanding the state rules of practice require the syllabus to be prepared by the judge preparing the opinion and to be confined to the points of law arising from the facts that have been determined.

The franchise of a railroad company is not necessarily to be regarded as valueless merely because its present earnings are not sufficient to pay more than high grade investments or even to pay operating expenses. *State Railroad Tax Cases*, 92 U. S. 575.

A state statute imposing a tax on railroads is not unconstitutional as denying equal protection of the law. The classification rests upon a reasonable and sufficient basis of distinction.

In the absence of a construction by the state court to that effect, the Federal court should not, if it can avoid doing so, place such a construction upon a state statute as would render it unconstitutional.

"Interstate," as used in a state tax statute, can fairly be construed as including all commerce other than "intrastate" when the evident purpose is to tax only the earnings subject to state taxation.

In a state statute imposing a tax on intrastate earnings, it is reasonable to suppose that the exclusion of interstate earnings from taxation extended to earnings from foreign commerce when another construction would render the statute unconstitutional.

The reasonableness of an excise or privilege tax, unless some Federal right is involved, is within the discretion of the state legislature.

Where a state statute does not on its face manifest a purpose to interfere with interstate commerce, this court cannot accept historical facts in connection with its enactment as evidence of a sinister purpose on the part of the legislature to evade obligations of the Federal Constitution, without a more substantial basis than appears in this case.

Double taxation does not exist in a legal sense unless the double tax is levied upon the same property within the same jurisdiction, and an excise tax measured on earnings from operating the property is not a double tax because the property itself is taxed.

These actions do not involve enforcement of penalties; and the penalty provisions of this statute if unconstitutional are severable by the express terms of the statute itself.

The Ohio statute of 1911 imposing an excise tax of four per cent. on gross intrastate earnings of railroad companies is not unconstitu-

tional, either as denying equal protection of the laws, or as depriving the railroads of their property without due process of law, or as interfering with interstate commerce, or as being an attempt to indirectly tax total gross receipts of the railroads, or as double taxation. 203 Fed. Rep. 537, affirmed.

THESE suits were brought in the United States District Court for the Southern District of Ohio (Eastern Division) by appellants, which are Ohio railroad corporations, to enjoin the certification and collection by appellees of a tax which the State was seeking to enforce upon the privilege of carrying on business in that State. This tax appellants claimed to be in violation of the due process and equal protection clauses of the Fourteenth Amendment and of the commerce clause of the Federal Constitution, and also of the preamble and sections two and nineteen of the Ohio constitution.

A restraining order was allowed by the District Court, and afterwards appellants' motions for temporary injunctions came on for hearing before three judges, of whom one was a circuit judge, pursuant to § 266 of the Judicial Code (36 Stat. 1162, c. 231), which went into effect shortly after the bills were filed. The two cases were argued and considered together, upon the facts averred in the bills, which were, for the purposes of the motions, conceded to be true by appellees, and, after consideration, the temporary injunctions were refused. 203 Fed. Rep. 537.

Appellants come direct to this court, under the same section of the Code.

The tax law in question, the validity of which is attacked generally, and also specially in its application to appellants, was enacted in its present form May 31, 1911. (102 Ohio Laws, 224.)

It created a tax commission, with defined powers, and prescribed various taxes, some upon property and others upon franchises and privileges, with sundry provisions, penal and otherwise, for the collection thereof. Some of

these taxes were new in Ohio law, others were carried over from previously existing statutes.

The tax here in question is limited in its operation to certain lines of quasi-public business, specifically named in the act and therein referred to as "public utilities," including railroads.

As applied to railroads, the act requires the filing with the Tax Commission, by each railroad doing business in the State, of a statement, on or before September 1, setting forth, among other things, its "entire gross earnings, including all sums earned or charged, whether actually received or not, for the year ending on the thirtieth day of June next preceding, from whatever source derived, for business done within this State, excluding therefrom all earnings derived wholly from interstate business or business done for the Federal Government. Such statement shall also contain the total gross earnings of such company for such period in this State from business done within this State." (Sections 81 and 83 of Act; §§ 5470 and 5472, General Code of Ohio.)

It is further provided that on the first Monday of October the Commission "shall ascertain and determine the gross earnings as herein provided, of each railroad company whose line is wholly or partially within this State, for the year ending on the thirtieth day of June next preceding, excluding therefrom all earnings derived wholly from interstate business or business done for the Federal Government. The amount so ascertained by the Commission shall be the gross earnings of such railroad company for such year." (Section 88 of Act; § 5477, Gen. Code.)

The act further provides that on the first Monday of November the Commission shall certify to the Auditor of State the amount of the "gross earnings so determined," (§ 93 of Act; § 5482, Gen. Code),—and that—"In the month of November, the Auditor of State shall charge for

collection, from each railroad company, a sum in the nature of an excise tax, for the privilege of carrying on its intrastate business, to be computed on the amount so fixed and reported to him by the Commission, as the gross earnings of such company on its intrastate business for the year . . . by taking four per cent. of all such gross earnings." (Section 97 of Act; § 5486, Gen. Code.). The tax is imposed equally and alike on corporations, partnerships, and individuals. (Section 39 of Act; § 5415, Gen. Code.)

*Mr. Robert J. King* and *Mr F. A. Durban* for appellants:

The Federal jurisdiction rests upon the presence of Federal questions.

The equity jurisdiction rests upon prevention of cloud upon real estate title, inadequacy of legal remedies, threatened irreparable damage and prevention of multiplicity of suits. Cooley on Taxation, p. 536; *Dows* v. *Chicago*, 11 Wall. 108, 112; *Shelton* v. *Platt*, 139 U. S. 591; *Ex parte Young*, 209 U. S. 123.

Under the constitution of Ohio, as construed by the Ohio Supreme Court in *Southern Gum Co.* v. *Laylin*, 66 Oh. St. 578, the legislature is without power to impose a privilege tax which is in excess of the value of the privilege taxed. Inasmuch as the admitted facts show the present tax upon appellants to wholly exceed such value, its exaction as to them violates the state constitution, and amounts to confiscation and a taking of their property without due process of law. *Adler* v. *Whitbeck*, 44 Oh. St. 539; *Barnes* v. *Brown*, 130 N. Y. 371; *Allegheny* v. *West. Penna. R. Co.*, 138 Pa. St. 375, 383; *Dillon* v. *Anderson*, 43 N. Y. 231; *Erickson* v. *Cass County*, 11 Nor. Dak. 494; *Galligher* v. *Jones*, 129 U. S. 193; *Gal., H. & S. A. R. Co.* v. *Texas*, 210 U. S. 223; Gray's Limitation of Taxing Power, §§ 47a, 1317; *Hagerty* v. *State*, 55 Oh. St. 613; *Hartford* v. *West Middle District*, 45 Connecticut, 462; *Martin* v. *Dist.*

*of Col.*, 205 U. S. 135; *Nor. Pac. R. Co.* v. *Nor. Dak.*, 216 U. S. 579; *Norwood* v. *Baker*, 172 U. S. 269; *O'Brien* v. *Wheelock*, 184 U. S. 450; *Post. Tel. Co.* v. *Adams*, 155 U. S. 688, 697; *Shoemaker* v. *United States*, 147 U. S. 282; *Southern Gum Co.* v. *Laylin*, 66 Oh. St. 578; *State* v. *Guilbert*, 70 Oh. St. 229; *State* v. *Ferris*, 53 Oh. St. 314; *State Railroad Tax Cases*, 92 U. S. 575, 606; Sutherland on Damages, §§ 88, 89, 657, 692; *Walsh* v. *Barron*, 61 Oh. St. 15; *Warren* v. *Stoddart*, 105 U. S. 224; *West. Un. Tel. Co.* v. *Wright*, 185 Fed. Rep. 250, 257; *West. Un. Tel. Co.* v. *Mayer*, 28 Oh. St. 521; *Willcox* v. *Consol. Gas Co.*, 212 U. S. 19.

The tax in question is not a tax upon corporate franchises or privileges, as such, and cannot be saved on that theory. *Adler* v. *Whitbeck*, 44 Oh. St. 539; *Flint* v. *Stone-Tracy Co.*, 220 U. S. 107; *State* v. *Taylor*, 55 Oh. St. 61.

The tax is not an exercise of the police power for the purpose of meeting expenses incident to the regulation of railroads and other utilities. *Adler* v. *Whitbeck*, 44 Oh. St. 539; *Tennessee* v. *Whitworth*, 117 U. S. 129.

The value limitation, as laid down in the *Laylin* case, is for the protection of the individual and his property. Cooley's Const. Lim., 7th ed., p. 65; *Missouri Rate Cases*, 230 U. S. 474, 508; *Walsh* v. *Barron*, 61 Oh. St. 15.

There is an arbitrary and discriminatory classification. *Athens* v. *N. Y. &c. Tel. Co.*, 9 Pa. Dist. Rep. 253; *Barber* v. *Connolly*, 113 U. S. 27; *Beckett* v. *Mayor*, 118 Georgia, 58; *Bell's Gap R. R. Co.* v. *Pennsylvania*, 134 U. S. 232; *Cache County* v. *Jensen*, 21 Utah, 207; *Clark* v. *Titusville*, 184 U. S. 329; *Findlay* v. *Frye*, 51 Oh. St. 390; *Gulf &c. Ry. Co.* v. *Ellis*, 165 U. S. 150, 165; *Home Ins. Co.* v. *New York*, 134 U. S. 594; *Jaeger* v. *Burr*, 36 Oh. St. 164; *Juniata Limestone Co.* v. *Gagley*, 187 Pa. St. 193; *Kentucky R. R. Tax Cases*, 115 U. S. 321; *Magoun* v. *Illinois Savings Bank*, 170 U. S. 283; *Minneapolis Ry. Co.* v. *Beckwith*, 129 U. S. 26; *Peoria* v. *Gugenheim*, 61 Ill. App. 374; *Railroad Co.* v. *Connelly*, 10 Oh. St. 159; *Railroad Co.* v. *Poland*, 10

Nisi Prius (N. S.) 617; *State* v. *Heinnan*, 65 N. H. 103; *State* v. *Moore*, 113 Nor. Car. 697; *State* v. *Whitcorn*, 122 Wisconsin, 110; *Uppington* v. *Oviatt*, 24 Oh. St. 232; *West. Un. Tel. Co.* v. *Wright*, 185 Fed. Rep. 250; *Wyatt* v. *Ashbrook*, 154 Missouri, 375; Wyman, §§ 39, 53, 97, 100, 106.

The four per cent. tax, in the case of railroads, was imposed because of their being extensively engaged in interstate commerce, and was intended to be and is a burden upon interstate commerce, in violation of the commerce clause of the Federal Constitution. *Brimmer* v. *Rebman*, 138 U. S. 78; *Galveston &c. Ry. Co.* v. *Texas*, 210 U. S. 217; *McCulloch* v. *Maryland*, 4 Wheat. 316; *Mugler* v. *Kansas*, 123 U. S. 623; *Express Co.* v. *Minnesota*, 223 U. S. 335, 341.

Should it be claimed that the privilege of carrying on the business has a value, if considered as property, sufficient to meet the requirements of the value limitation in the *Laylin Case*, the result is double taxation. *Adams Exp. Co.* v. *Ohio*, 165 U. S. 194; *S. C.*, 166 U. S. 185.

The tax is based upon all gross earnings, excepting only such as are derived wholly from interstate business and business for the Federal Government. The failure to exclude also earnings from foreign commerce, in which appellants are engaged, renders act invalid under commerce clause. *Eidman* v. *Martinez*, 184 U. S. 578; *Hepburn* v. *Ellzey*, 2 Cranch, 445; *Lord* v. *Steamship Co.*, 102 U. S. 541; *Meyer* v. *Wells, Fargo & Co.*, 223 U. S. 298, 302; *Veazie* v. *Moor*, 14 How. 568, 573.

The act is unconstitutional because of its effort to prevent judicial inquiry and force obedience to its terms and to administrative acts thereunder, irrespective of their validity. It thereby denies due process and equal protection. *Davidson* v. *New Orleans*, 96 U. S. 97; *Goldberg* v. *Stablemen's Union*, 86 Pac. Rep. 806; *Jones* v. *Davis*, 35 Oh. St. 474; *Pierce* v. *Stablemen's Union*, 103 Pac. Rep. 324; *Southern Gum Co.* v. *Laylin*, 66 Oh. St. 578; *State* v. *Jones*, 51 Oh. St. 492, 516; *Ex parte Young*, 209 U. S. 123.

*Mr. Frank Davis, Jr.,* and *Mr. Clarence D. Laylin,* with whom *Mr. Timothy S. Hogan,* Attorney General of the State of Ohio, was on the brief, for appellees:

It is necessary to examine into entire system of taxation of the State applicable to railroad companies in order to determine the validity and effect of the tax involved in the cases at bar. See *Gal., H. & S. An. R. R. Co.* v. *Texas,* 210 U. S. 217, 226; *Maine* v. *Grand Trunk Ry. Co.,* 142 U. S. 217; *U. S. Exp. Co.* v. *Minnesota,* 223 U. S. 323.

The contention is unfounded in law or in fact that under the constitution of Ohio, as construed by the Ohio Supreme Court, the legislature is without power to impose any privilege tax which is in excess of the value of the privilege taxed, and that inasmuch as the admitted facts show, it is alleged, the present tax upon appellants to wholly exceed such value, its exaction as to them violates the state constitution and amounts to confiscation and the taking of their property without due process of law. *Southern Gum Co.* v. *Laylin,* 66 Oh. St. 578; *Adler* v. *Whitbeck,* 44 Oh. St. 539; *Ashley* v. *Ryan,* 49 Oh. St. 504; 153 U. S. 436; *Express Company* v. *State,* 55 Oh. St. 69; *Hagerty* v. *State,* 55 Oh. St. 613; *State* v. *Ferris,* 53 Oh. St. 314; *Telegraph Company* v. *Mayer,* 28 Oh. St. 521.

For the nature of the privilege taxed by the law as involved in *Southern Gum Company* v. *Laylin,* and as to its being the privilege of corporate existence, as distinguished from the privilege of doing business as a corporation; and as to the tax being one on the franchise as distinguished from an excise occupation tax, see 1 Cooley on Taxation, 3d ed., pp. 31, 37; *Flint* v. *Stone-Tracy Co.,* 220 U. S. 107; *Southern Gum Co.* v. *Laylin,* 66 Oh. St. 578.

As to the element of natural monopoly, which is common to all the utilities taxed, and constitutes them such, see *Cin. Gas Light Co.* v. *State,* 18 Oh. St. 238, 243; *Munn* v. *Illinois,* 92 U. S. 113, 126; 1 Wyman on Pub. Serv. Corp. §§ 1, 50, 90; *Zanesville* v. *Gas Co.,* 47 Oh. St. 1, 33.

As to the burdens imposed upon the State and the public by the conduct of the business taxed see, *Adler* v. *Whitbeck,* 44 Oh. St. 539; *Express Co.* v. *Minnesota,* 223 U. S. 335; *Gal., H. & S. A. Ry. Co.* v. *Texas,* 210 U. S. 217.

As to corporate public utilities, the corporate franchise itself, see *Adams Exp. Co.* v. *Ohio,* 166 U. S. 185, 223; *Express Co.* v. *Minnesota,* 223 U. S. 335; *Gal., H. & S. A. Ry. Co.* v. *Texas,* 210 U. S. 217; *People* v. *Williams,* 200 N. Y. 93; *State* v. *C. & P. Ry. Co.,* 13 O. N. P. (N. S.) 671; *Ohio* v. *Traction Co.,* Franklin County Ct. of App., Dec. 6, 1913; *State* v. *Taylor,* 55 Oh. St. 61: *State Tax on Railway Gross Receipts,* 15 Wall. 284.

The so-called "value limitation" referred to in *Southern Gum Company* v. *Laylin,* 66 Oh. St. 578, was not intended to be and cannot be applied to the taxation of the privilege reached by the law involved in the cases at bar. *Adler* v. *Whitbeck,* 44 Oh. St. 539.

Even if the said "value limitation" could be applied generally to the imposition of the tax involved in the cases at bar, it cannot be invoked by an individual taxpayer to relieve him from the burden of the tax on a showing that his business is unprofitable. *Ashley* v. *Ryan,* 49 Oh. St. 504, 525, 526; *Baker* v. *Cincinnati,* 11 Oh. St. 549; *Cincinnati Gas Light Co.* v. *State,* 18 Oh. St. 238; Cooley's Const. Lim., 6th ed., 587, 588, 598, 606–613; 1 Cooley on Taxation, 3d ed., 3, 9, 31, 84, 181, 192, 225, 254, 390, 391, 684, 2 *Id.* 1153; *Flint* v. *Stone-Tracy Co.,* 220 U. S. 108, 151; *Lander* v. *Burke,* 65 Oh. St. 532, 542; *Lewis* v. *State,* 69 Oh. St. 479; *Loan Asso.* v. *Topeka,* 20 Wall. 655, 664; *McCulloch* v. *Maryland,* 4 Wheat. 316; 428; *McNeil* v. *Hagerty,* 51 Oh. St. 255, 265; *Monnet* v. *State,* 45 Oh. St. 69; *Missouri Rate Cases,* 230 U. S. 474, 508; *Muller* v. *Oregon,* 208 U. S. 412; *Nor. Pac. R. R. Co.* v. *Nor. Dak.,* 216 U. S. 579; *Shotwell* v. *Moore,* 45 Oh. St. 646; *State* v. *Ferris,* 53 Oh. St. 314, 326; *State* v. *Guilbert,* 70 Oh. St.

253; *State Railroad Tax Cases*, 92 U. S. 575; *Willcox* v. *Consolidated Gas Co.*, 212 U. S. 19.

Excise taxation in the pure sense is distinguished from taxation of franchises as such. See Century Dictionary; *Flint* v. *Stone-Tracy Co.*, 220 U. S. 108, 151; *Missouri Rates Case*, 230 U. S. 474, 508; *Thomas* v. *United States*, 192 U. S. 372.

The Federal question sought to be raised by appellants depends upon their interpretation of *Southern Gum Company* v. *Laylin*, 66 Oh. St. 578; they do not and cannot claim under the Fourteenth Amendment to the Federal Constitution, independently of that decision. 1 Cooley on Taxation, 3d ed., 55; *Kelly* v. *Pittsburg*, 104 U. S. 78; *McCray* v. *United States*, 195 U. S. 27.

Equal protection of the laws of Ohio is not denied by the legislation involved in the cases at bar because of its alleged failure to apply to all "Public Utilities." *Am. Sugar Co.* v. *Louisiana*, 179 U. S. 89; *Armour Packing Co.* v. *Lacy*, 200 U. S. 226; *Bell's Gap R. R. Co.* v. *Pennsylvania*, 134 U. S. 232; *Brown-Foreman Co.* v. *Kentucky*, 217 U. S. 563; *Connolly* v. *Union Sewer Pipe Co.*, 184 U. S. 540; *Home Ins. Co.* v. *New York*, 134 U. S. 594; *Kentucky R. R. Tax Cases*, 116 U. S. 321; *Magoun* v. *Illinois Savings Bank*, 170 U. S. 283; *Munn* v. *Illinois*, 94 U. S. 113; *Southwestern Oil Co.* v. *Texas*, 217 U. S. 114; *State ex rel.* v. *Ferris*, 53 Oh. St. 314, 341; *Cargill Co.* v. *Minnesota*, 180 U. S. 452.

The Ohio law does not deny the equal protection of the laws of the State because of the differences in the rates imposed by it upon different public utilities. *Kidd* v. *Alabama*, 188 U. S. 730; *Pacific Exp. Co.* v. *Seibert*, 142 U. S. 339; *Railroad Co.* v. *Poland*, 10 O. N. P. (N. S.) 617; *Savannah &c. I. Ry.* v. *Savannah*, 198 U. S. 392.

The act does not deny the equal protection of the laws of Ohio because of its failure to classify railroads for excise tax purposes according to any alleged notorious

differences among them. *Blackstone* v. *Miller*, 188 U. S. 189; 1 Cooley on Taxation, 3d ed., 390, 391; *Muller* v. *Oregon*, 208 U. S. 412.

The readjustment of rates of excise taxation made by the Ohio legislature following the decision in *Galveston, Harrisburg and San Antonio Railroad Company* v. *Texas*, 210 U. S. 217, does not disclose an intention indirectly to burden or to continue to burden interstate commerce as such. 1 Cooley on Taxation, 3d ed., 41, 411; *People* v. *Brooklyn*, 4 N. Y. 419, 426, 427; *Ratterman* v. *Telegraph Co.*, 127 U. S. 411.

The tax imposed by the Ohio law is not in effect an additional tax upon property. *Adler* v. *Whitbeck*, 44 Oh. St. 539; *Anderson* v. *Brewster*, 44 Oh. St. 576; *Ashley* v. *Ryan*, 49 Oh. St. 504; *Express Co.* v. *State*, 55 Oh. St. 69; *Flint* v. *Stone-Tracy Co.*, 220 U. S. 107; *State* v. *Ferris*, 53 Oh. St. 314; *Telegraph Co.* v. *Mayer*, 28 Oh. St. 521.

Foreign commerce is not burdened by the act. *Ratterman* v. *West. Un. Tel. Co.*, 127 U. S. 424, 425.

The alleged coercive sections of the Ohio law properly interpreted violate no constitutional limitation; but even if regarded as unconstitutional, their invalidity does not affect the substantive provisions of the act; nor can their validity be questioned in these cases. *Flint* v. *Stone-Tracy Co.*, 200 U. S. 177; *Minnesota Rate Cases*, 230 U. S. 352; *Willcox* v. *Consolidated Gas Co.*, 212 U. S. 53, 54; *Ex parte Young*, 209 U. S. 123.

MR. JUSTICE PITNEY, after making the foregoing statement, delivered the opinion of the court.

These two cases depend upon practically identical facts, and present the same questions of law.

The Federal jurisdiction arose because of the Federal questions presented in the record, and did not depend upon diversity of citizenship; and it extends of course to

the determination of all the questions presented, irrespective of the disposition that may be made of the Federal questions. *Siler* v. *Louisville & Nashville R. Co.*, 213 U. S. 175, 191; *Michigan Central R. Co.* v. *Vreeland*, 227 U. S. 59, 63.

The right to invoke the equity jurisdiction is clear; for the Act specifically makes the tax a lien upon the real estate of appellants, from the cloud of which they sought to free it by the bringing of these actions (§ 117 of Act; § 5506, Gen. Code); and the bills alleged threatened irreparable injury through the enforcement of the penalties and coercive features of the Act. *Shelton* v. *Platt*, 139 U. S. 591, 598; *Ex parte Young*, 209 U. S. 123.

The following are the questions to be disposed of:

First, it is insisted by appellants that under the state constitution, as construed by the Ohio Supreme Court in *Southern Gum Co.* v. *Laylin*, 66 Oh. St. 578, the legislature is without power to impose a privilege tax which is in excess of the value of the privilege; that the admitted facts show the present tax upon appellants respectively to be in excess of such value; and that therefore as to them its exaction violates the state constitution, and amounts to confiscation, and a taking of property without due process of law.

As to the facts upon which this contention is based, the bill of complaint of the Marietta, Columbus & Cleveland Railroad Company shows that the tax charged against it for the year 1911 amounts to $2,301.24; that the capital of the company is all, or practically all, invested in its railroad; that this investment was and is a reasonable and proper one; that due care and prudence have been used in the construction, maintenance and operation of the property and the conduct of the business; that the greatest economy has been and is being practiced in the effort to make the railroad yield a fair return upon the investment; but that notwithstanding these efforts it has

never been able to earn, and is not now able to earn, from
interstate or intrastate business, or both combined, after
paying necessary and proper expenses, including taxes
other than the excise tax, a return on the investment in its
railroad, or on the value thereof, equal to the current rate
of return on legitimate high-grade investments at all
times readily available in the market; nor have its in-
trastate earnings, after deducting operating expenses
properly attributable thereto, been sufficient to yield a
return on that portion of its investment properly attrib-
utable to intrastate operations, equal to the current rate
of return on legitimate high-grade investments; that,
on the contrary, the gross earnings have not been and are
not sufficient to pay actual operating expenses, and that
this condition will continue to exist during the year which
the excise tax is intended to cover.

The bill of complaint of the Ohio River and Western
Railway Company contains similar averments, except
as to its inability to pay actual operating expenses. Its
tax amounts to $6,653.60.

The case referred to, *Southern Gum Co.* v. *Laylin*, 66
Oh. St. 578, dealt with an Act of April 11, 1902, known as
the Willis Law. The court held it to be an excise or
franchise tax, not a property tax, and therefore not sub-
ject to the express limitations imposed by the state con-
stitution upon taxes of the latter kind, but only to such
limitations as were to be implied from certain other pro-
visions of the constitution, respecting which the court
said (p. 594): "The constitution was established to
'promote our common welfare.' Preamble to the con-
stitution. Government is instituted for the equal protec-
tion and benefit of the people. Section two of the bill of
rights. Private property shall ever be held inviolate, but
subservient to the public welfare. Section nineteen of the
bill of rights. These provisions of the constitution are
implied limitations upon the power of taxation of privileges

and franchises, and limit such taxation to the reasonable value of the privilege or franchise conferred originally, or to its continued value from year to year. *Ashley* v. *Ryan*, 49 Ohio St. 504; *State ex rel.* v. *Ferris*, 53 Ohio St. 314; and *Hagerty* v. *State*, 55 Ohio St. 613, are examples of taxing the privilege or franchise conferred; while *Telegraph Company* v. *Mayer*, 28 Ohio St. 521, and *Express Company* v. *State*, 55 Ohio St. 69, are examples of taxing the continued value of the existing privilege or franchise from year to year. These limitations prevent confiscation and oppression under the guise of taxation, and the power of such taxation cannot extend beyond what is for the common or public welfare, and the equal protection and benefit of the people; but the ascertaining and fixing of such values rests largely in the general assembly, but finally in the courts."

This proposition is carried into the syllabus, which, under the rules of practice of the Supreme Court, is to be prepared by the judge assigned to prepare the opinion, is to be confined to the points of law arising from the facts of the cause that have been determined by the court, is to be submitted to the judges concurring therein for revisal before its publication, and is to be inserted in the book of reports.

An examination of the state decisions cited in the *Laylin Case*, with others referred to in the opinion of the District Court and in the briefs of counsel, convinces us that the District Court was correct in its conclusion that the state court, in the *Laylin Case*, dealt with a general law and its operation on all corporations of given classes throughout the State, and not with its effect upon specific financially weak corporations; that it was not intended to hold that the courts as final arbiters might overthrow a law imposing a tax on privileges and franchises merely because in isolated cases such law might impose a hardship, but only that those excise laws whose general operation is confiscatory and oppressive are unconstitutional.

Nor do we think that from the facts of the present case it is to be inferred that the franchises of plaintiffs in error are valueless merely because it appears that the present earnings of the railroads are not sufficient to pay more than can be derived from legitimate high-grade investment securities that are readily available on the market, or (in the case of one of the roads), are not even sufficient to pay operating expenses. Upon this point we are content to refer to, without repeating, the language employed by Mr. Justice Miller, speaking for this court in *State Railroad Tax Cases*, 92 U. S. 575, 606.

Secondly, it is contended that the Act arbitrarily discriminates against plaintiffs in error and other railroad companies in that (a), it does not include all other public utilities carrying on business within the State; those omitted, as is said, being grain elevators, stock-yards, ferries, bridge companies, and inn-keepers; and (b), the law does not operate uniformly among the utilities that are taxed, since, on electric light, gas, natural gas, water works, telephone, messenger or signal, union depot, heating, coaling, and water transportation companies, the tax amounts to 1.2% of gross intrastate receipts, as to suburban and interurban railroads it is fixed at 1.2% of gross intrastate earnings, and on express and telegraph companies, it is 2%; while on railroads, including plaintiffs in error, it is 4% of such earnings, and the same on pipe line companies.

Both of these contentions turn upon the familiar question of classification, concerning which so much has been written. We agree with the court below that whether the question be considered in view of the uniformity and equality provisions of the Ohio constitution, or of the "equal protection" clause of the Fourteenth Amendment, the result is the same; it cannot be said that the classification rests upon no reasonable and sufficient basis of distinction. *State* v. *Guilbert*, 70 Oh. St. 229, 253; *Kentucky*

*Railroad Tax Cases*, 115 U. S. 321, 337; *Bell's Gap Railroad Co.* v. *Pennsylvania*, 134 U. S. 232, 237; *Magoun* v. *Illinois Trust & Savings Bank*, 170 U. S. 283, 293; *Southwestern Oil Co.* v. *Texas*, 217 U. S. 114, 121 *et seq.*

In the third place, it is insisted that the act, as applied to railroads, is a burden upon their foreign commerce.

This contention is rested in part upon the language of §§ 83 and 88, which in terms provide for ascertaining the earnings of the railroad "from whatever source derived, for business done within this State, excluding therefrom all earnings derived wholly from interstate business or business done for the Federal government." This, it is argued, has the effect of imposing a tax with respect to the gross receipts from foreign commerce, because such commerce is not expressly excepted. Section 97, however, indicates an intent to take into consideration for the purpose of measuring the excise tax only the earnings upon intrastate business, and it seems clear enough that in the former sections the word "interstate" was used as meaning "not intrastate," rather than in its technically correct signification. Certainly, in the absence of a construction by the state court of last resort to the effect that the receipts from foreign commerce are to be included, and without any attempt on the part of the taxing authorities to include them, the Federal courts ought not to place a construction upon the act that would render it unconstitutional.

Fourthly, it is contended that the history of the legislation upon the subject shows that the act of May 31, 1911, was really contrived to impose upon the railroad companies a franchise tax proportionate to their interstate commerce, and that such is its actual as well as intended effect.

It is said that the present act is a reënactment, without material change so far as present purposes are concerned, of an act of March 10, 1910; that prior to the latter act

a law known as the Cole Law was in force, under which each railroad was compelled to pay a tax equal to one per centum of its entire gross earnings, computed by multiplying the average gross earnings per mile over the entire system by the number of miles in Ohio; that this act was obnoxious to the "commerce clause" of the Federal Constitution, for the reasons that entered into the decision of this court in *Galveston, Harrisburg &c. Ry. Co.* v. *Texas,* 210 U. S. 217; that after the decision of this case in May, 1908, it was anticipated that the Cole Law would probably be held unconstitutional (as it has since been held by an inferior state court in Ohio), and so the Legislature contrived the act of March 10, 1910, for the purpose of imposing a tax upon the railroads as heavy as that imposed by the Cole Law, while avoiding the form of that enactment; and that for this reason the act of March 10, 1910, increased the percentages in accordance with which the taxes were to be severally determined as follows: Railroads and pipe line companies from 1 to 4 per cent.; express and telegraph companies from 1 to 2 per cent.; all other utilities from 1 to 1 1–5 per cent.; but that instead of taking all the gross earnings, the new percentages were to be applied only to intrastate earnings. It is contended that the increase in the percentages as to railroad and pipe line companies was due to the fact that it was conceived that about three-fourths of their business was interstate, and that therefore a tax of 4% on the intrastate earnings would be about equal to a tax of 1% on the total; in other words, that the tax rate was increased fourfold because such utilities were engaged in interstate commerce.

The tax is, however, in substance as well as in form, an excise or privilege tax. Its reasonableness, unless some Federal right be violated, is within the discretion of the state legislature. We have seen that the classification adopted cannot be deemed illusory; that is, there is no

apparent violation of the equality provisions of the state constitution or of the "equal protection" clause of the Fourteenth Amendment, although railroad and pipe line companies are required to pay at the rate of four per cent. of the annual intrastate earnings, while other public service corporations pay a less percentage. It is, of course, entirely settled that a State cannot, consistently with the Federal control of interstate commerce, lay such taxes, either upon property rights or upon franchises or privileges, as in effect to burden such commerce. But the line is not always easily drawn, as recent cases sufficiently show. *Galveston, Harrisburg &c. Ry. Co.* v. *Texas*, 210 U. S. 217, 225, 229; *United States Express Co.* v. *Minnesota*, 223 U. S. 335, 344; *Williams* v. *Talladega*, 226 U. S. 404, 416; *Baltic Mining Co.* v. *Massachusetts*, 231 U. S. 68, 82.

The present act does not on its face manifest a purpose to interfere with interstate commerce, and we are unable to accept the historical facts alluded to as sufficient evidence of a sinister purpose, such as would justify this court in striking down the law. We could not do this without in effect denouncing the legislature of the State as guilty of a conscious attempt to evade the obligations of the Federal Constitution. Assuming the law was changed in 1910 because of a fear that the Cole Law would be held unconstitutional, the mere fact that, while excluding interstate earnings from the multiplicand, the multiplier was increased, is not of itself deemed sufficient evidence of an unlawful effort to burden a privilege that is not a proper subject of state taxation.

Fifthly, it is contended that the act is in effect a double tax upon property, and hence lacking in the uniformity required by the state constitution. But, as was pointed out by the District Court, the exaction of four per cent. of the gross intrastate earnings is not a property tax but an excise tax, whose amount is fixed and measured by such earnings; and double taxation in a legal sense does not

exist unless the double tax is levied upon the same property within the same jurisdiction. Plaintiffs in error pay one tax with respect to property, another with respect to the privilege or occupation; hence the taxation is not double. *Bradley* v. *Bauder*, 36 Oh. St. 28, 35; *Southern Gum Co.* v. *Laylin*, 66 Oh. St. 578, 596.

The so-called double tax is also laid hold of as a ground for the contention that there is a denial of equal protection within the meaning of the Fourteenth Amendment. This, however, is but another form of the objection to the classification, which has already been disposed of.

Finally, it is contended that the act is unconstitutional because of the severity of the penalties imposed for withholding the tax. But these actions do not involve any present attempt to enforce the penalties; and the act contains a section (160) which in terms declares: "The sections of this act, and every part of such sections, are hereby declared to be independent sections and parts of sections, and the holding of any section or part thereof to be void or ineffective shall not affect any other section or part thereof." The penalty clauses, if themselves unconstitutional, are severable, and there is therefore no present occasion to pass upon their validity. *Ex parte Young*, 209 U. S. 123; *Willcox* v. *Consolidated Gas Co.*, 212 U. S. 19, 53, 54; *Flint* v. *Stone-Tracy Co.*, 220 U. S. 107, 177; *Grand Trunk Ry.* v. *Michigan Ry. Comm.*, 231 U. S. 457, 473.

*Decrees affirmed.*

MR. JUSTICE DAY took no part in the decision of these cases.