RAIL & RIVER COAL COMPANY *v.* YAPLE, ET AL., CONSTITUTING THE INDUSTRIAL COMMIS- SION OF OHIO.

APPEAL FROM UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO.

No. 513. Argued December 1, 1914.—Decided February 23, 1915.

A state police statute regulating the basis for compensation of miners on the run of the mine subject to regulations of an industrial com- mission, but which makes the orders of the Commission only *prima facie* reasonable and provides for their prompt judicial review and which does not prevent employers from screening the coal as they desire for marketing it, amply protects the rights of the employers.

Only alleged infractions of the constitutional rights of those attacking the statute can be considered in determining its constitutionality.

That a State may, without violating the due process provision of the Fourteenth Amendment place reasonable restraints upon liberty of contract, *Chicago &c. R. R.* v. *Maguire*, 219 U. S. 549, applies to prescribing methods for compensation of miners for producing coal. *McLean* v. *Arkansas*, 211 U. S. 539.

Coal mining is a proper subject for police regulation, and it is for the legislature of the State to determine, so long as its action is not arbi-

trary, the measure of relief in regard to evils to be corrected in connection therewith.

It is not the province of the court to revise conclusions which men versed in a business have found practicable; nor will this court do so in advance of the law authorizing a commission composed of such men to prescribe regulations being put into effect.

A state police statute will not be declared unconstitutional as denying due process of law on the ground that the penalties are excessive in a suit brought to enjoin the enforcement of the statute and in which penalties are not involved; nor where, as in this case, the penalties are not so excessive as to prevent a resort to the courts to test the constitutionality of the statute.

The Ohio Run of Mine or Anti-screen Law of 1914 is not unconstitutional under the due process provision of the Fourteenth Amendment either as taking the property of employés without due process of law, or by denying them an opportunity to be heard, nor by unreasonably abridging their liberty of contract nor for prescribing unreasonable conditions as to screening the coal and ascertaining the amount of impurities therein by the Industrial Commission, nor does it exceed the power of the legislature of the State under the constitution of the State.

214 Fed. Rep. 273, affirmed.

THE facts, which involve the constitutionality both under the Fourteenth Amendment to the Constitution of the United States and similar provisions of the constitution of the State of Ohio of the "Run of Mine" or "Anti-Screen" Coal Mine Law of 1914 of the State of Ohio, are stated in the opinion.

*Mr. A. C. Dustin,* with whom *Mr. Hermon A. Kelley* and *Mr. Paul J. Bickel* were on the brief, for appellant:

The Mine-run law deprives appellant of liberty and property without due process of law in violation of the Fourteenth Amendment.

The quality of coal to be produced is fixed by the Industrial Commission; the operator required to pay for coal conforming to Commission's standard regardless of its own needs. The amount of fine coal is fixed by the Commission.

The manner of production of coal is subject to regula-

tion by the Commission. The determinations of the Commission are based upon "proper mining" and not upon needs of operator's business.

Coal mining is a private business and coal lands are purely private property.

*McLean* v. *Arkansas*, 211 U. S. 539, sustaining the Arkansas act which was the basis of the decision, does not apply as the Ohio act is different from this Arkansas act.

The provisions in the Ohio act, depriving operators of freedom of contract and of control over their property are arbitrary, unreasonable and unnecessary because:

There are no practicable means of determining the amount of impurities unavoidable in proper mining, nor any practicable means of applying any such standard. No compensating public good results from these burdens; any standard other than that of marketability is useless; the operation of the percentage system will cause discord and trouble; the regulation provided by this act has no relation to purpose of law and is not incidental thereto.

The requirement that the operator pay for coal regardless of his needs is not a protection or benefit to anyone, but an arbitrary burden.

It is immaterial whether the Commission acts in good faith, or that a court review of the Commission's order is provided.

The Ohio act is beyond the bounds of police power.

This law is not intended for, nor justifiable on ground of, safety.

This law is not intended for, nor justifiable on ground of, conservation of natural resources.

The cases of conservation of oil, gas and water can be distinguished now as the conservation amendment of the Ohio constitution is applicable.

The penalties prescribed by the act are so excessive as to deprive appellant of equal protection of the law in violation of the Fourteenth Amendment.

This law is unconstitutional under the constitution of the State of Ohio.

The former mine-run law of 1898 was held invalid under Ohio constitution and the present law is more drastic than the former.

United States courts follow the State Supreme Court in regard to construction of state constitution.

The recent amendments to the Ohio constitution with reference to welfare of labor and conservation of natural resources do not abrogate or repeal the bill of rights of the Ohio constitution.

The present law is invalid under the holding of the Ohio Supreme Court.

In support of these contentions see *Adair* v. *United States,* 208 U. S. 161, 172; *Allgeyer* v. *Louisiana,* 165 U. S. 578; *Cotting* v. *Kansas City Stock Yards Co.,* 183 U. S. 79, 100; *Debitulia* v. *Lehigh Coal Co.,* 174 Fed. Rep. 886; *Eubank* v. *Richmond,* 226 U. S. 137, 144; *Ex parte Young,* 209 U. S. 123; *Express Co.* v. *Ohio,* 165 U. S. 194, 219; *German Alliance Ins. Co.* v. *Lewis,* 233 U. S. 389; *Haire* v. *Rice,* 204 U. S. 291, 301; *Holden* v. *Hardy,* 169 U. S. 366; *Hudson Water Co.* v. *McCarter,* 209 U. S. 349, 355; *Knoxville Iron Co.* v. *Harbison,* 183 U. S. 13; *Merchants Bank* v. *Pennsylvania,* 167 Oh. St. 461; *Minnesota* v. *Barber,* 136 U. S. 313; *McLean* v. *Arkansas,* 81 Arkansas, 304; *McLean* v. *Arkansas,* 211 U. S. 539; *Mo. Pacific Ry.* v. *Tucker,* 230 U. S. 340; *Muller* v. *Oregon,* 208 U. S. 412; *Nullett* v. *People,* 117 Illinois, 294; *Oakes* v. *Mase,* 165 O. S. 363; Ohio Constitution, Art. II, §§ 34 and 36; Ohio Laws, Vol. 93, p. 33 (Act of 1898); Ohio Laws, Vol. 104, page 181 §§ 1–7; *Ohio Oil Co.* v. *Indiana,* 177 U. S. 190, 202; *People* v. *Williams,* 189 N. Y. 131, 135; *Railroad Co.* v. *Ellis,* 165 U. S. 150, 153; *Railroad Co.* v. *Williams,* 233 U. S. 685; *Slaughter House Cases,* 16 Wall. 37; *Smith* v. *Texas,* 233 U. S. 630; *St. Germain Irrigating Co.* v. *Hawthorne Ditch Co.,* 143 N. W. Rep. 124, 127; *Sterritt* v. *Young,* 14 Wyo-

ming, 146; *Welch* v. *Swasey*, 214 U: S. 91; *Willcox* v. *Gas Co.*, 212 U. S. 19, 54; *Wilmington Mining Co.* v. *Fulton*, 205 U. S. 60.

Mr. *Clarence D. Laylin*, with whom Mr. *Timothy S. Logan*, Attorney General of the State of Ohio, Mr. *Robert M. Morgan* and Mr. *James I. Boulger* were on the brief, for appellees.

MR. JUSTICE DAY delivered the opinion of the court.

This case is brought here by appeal from an order of the District Court of the United States for the Northern District of Ohio, refusing an application for interlocutory injunction upon the petition of the Rail and River Coal Company, a West Virginia corporation, against Wallace D. Yaple, Mathew B. Hammond and Thomas J. Duffy, as members of and constituting the Industrial Commission of Ohio. The application was heard under § 266 of the Judicial Code before a Circuit judge and two District judges. The object of the bill was to restrain the Industrial Commission from putting into effect the so-called "Run of Mine" or "Anti-Screen" law of the State of Ohio, passed February 5th, 1914, by the legislature of that State, being entitled "An Act to Regulate the Weighing of Coal at the Mines." 104 Oh. Laws, 181. A copy of the Act is inserted in the margin.[1]

---

[1] BE IT ENACTED BY THE GENERAL ASSEMBLY OF THE STATE OF OHIO;

SECTION 1. Every miner and every loader of coal in any mine in this State who under the terms of his employment is to be paid for mining or loading such coal on the basis of the ton or other weight shall be paid for such mining or loading according to the total weight of all such coal contained within the car (hereinafter referred to as mine car) in which the same shall have been removed out of the mine; provided, the contents of such car when so removed shall contain no greater percentage of slate, sulphur, rock, dirt, or other impurity than that as-

Summarized, the bill sets forth that plaintiff is engaged in the mining business in Ohio, owning a large tract of coal lands, of approximately 32,000 acres, upon which it has four coal mines properly developed, employing upward

---

certained and determined by the industrial commission of Ohio as hereinafter enacted.

SECTION 2. Said industrial commission shall ascertain and determine the percentage of slate, sulphur, rock, dirt, or other impurity unavoidable in the proper mining or loading of the contents of mine cars of coal in the several operating mines within this State.

. SECTION 3. It shall be the duty of such miner or loader of coal and his employer to agree upon and fix, for stipulated periods, the percentage of fine coal commonly known as nut, pea, dust and slack allowable in the output of the mine wherein such miner or loader is employed. At any time when there shall not be in effect such agreed and fixed percentage of fine coal allowable in the output of any mine said industrial commission shall forthwith upon request of such miner or loader or his employer, fix such allowable percentage of fine coal, which percentage so fixed by said industrial commission shall continue in force until otherwise agreed and fixed by such miner or loader and his employer. Whenever said industrial commission shall find that the total output of such fine coal at any mine for a period of one month during which such mine shall have been operating while the percentage of fine coal so fixed by said industrial commission has been in force, exceeds the percentage so fixed by it, said industrial commission shall at once make, enter and cause to be enforced such order or orders relative to the production of coal at such mine, as will result in reducing the percentage of such fine coal, to the amount so fixed by said industrial commission.

SECTION 4. Said industrial commission shall, as to all coal mines in this State, which have not been in operation heretofore, perform the duties imposed upon it by the provisions hereof.

SECTION 5. Said industrial commission shall have full power from time to time, to change, upon investigation, any percentage by it ascertained and determined, or fixed, as provided in the preceding sections hereof.

SECTION 6. It shall be unlawful for the employer of a miner or loader of the contents of any car of coal to pass any part of such contents over a screen or other device, for the purpose of ascertaining or calculating the amount to be paid such miner or loader for mining or loading such contents, whereby the total weight of such contents shall be reduced or diminished. Any person, firm or corporation violating the

of 2,000 persons; that in the State of Ohio there are about 600 coal mines, employing upwards of 45,000 persons; that in the year 1913 more than 36,000,000 tons of coal were produced, and there was expended in wages to said employés upwards of $26,000,000; that the defendants are the members of the Industrial Commission of Ohio, vested by the legislature of that State with authority to enforce the provisions of the "Mine-Run Law"; that for many years mining has been conducted in the State of Ohio by the miners entering into contracts with their employers for a period of two years; that the last contracts expired on April 1, 1914.

The bill set forth the provisions of the act, and alleged that the same are unreasonable and arbitrary and impracticable in operation, and that the act is unconstitutional, as in violation of the Fourteenth Amendment to the Constitution of the United States, and in violation of the constitution of the State of Ohio, and that it delegates legislative authority to the Industrial Commission of the State; and although the bill was filed before the act went into effect, it was alleged that the Industrial Commission in putting the same into effect would work an irreparable

provisions of this section shall be deemed guilty of a misdemeanor and upon conviction, shall be fined for each separate offense not less than three hundred dollars nor more than six hundred dollars.

SECTION 7. A miner or loader of the contents of a mine car, containing a greater percentage of slate, sulphur, rock, dirt or other impurity, than that ascertained and determined by said industrial commission, as hereinabove provided, shall be guilty of a misdemeanor and upon conviction shall be punished as follows: for the first offense within a period of three days he shall be fined fifty cents; for a second offense within such period of three days he shall be fined one dollar; and for the third offense within such period of three days he shall be fined not less than two dollars nor more than four dollars. Provided, that nothing contained in this section shall affect the right of a miner or loader and his employer to agree upon deductions by the system known as docking, on account of such slate, sulphur, rock, dirt or other impurity.

injury to the plaintiff.  Upon application under this bill
to the District Court, composed of three judges, the injunc-
tion was denied (214 Fed. Rep. 273), and the case is
appealed to this court.

Under the system of wage payment and mining of coal
in use before the passage of this statute, miners in Ohio
were paid at a certain price per ton for screened lump coal,
that is, for coal which, after it is mined and brought to the
surface, is passed over a screen, the bars of which are one
and a quarter inches apart.  The report of the Ohio Coal
Mining Commission, a public document, copies of which
have been filed by counsel in this case, shows that that
system of mining was regarded as objectionable by the
miners, on the ground that they were not paid for mining
of a considerable quantity of marketable coal, and there
was dissatisfaction because of the wearing of the screens
so as to increase the size of the apertures between the bars
above the standard.  In Ohio, as in some other States,
there was much complaint because of this system.  It
appears that the employers generally desired to preserve
the screened-coal basis of payment, and objected to the
run of mine system, in which the miner is paid for mining
coal as it is when mined without screening.  Before enact-
ing the legislation now in controversy in the State of Ohio,
the question was referred to a Coal Mining Commission,
which Commission, after full investigation of the subject,
made the report referred to, in which it appears that the
arguments pro and con were considered and reported upon,
and a bill was recommended in the form in which the legis-
lature passed the present law.  The report of the Commis-
sion cannot be read without a conviction that there was an
earnest attempt to eliminate the objections to the "run of
mine" basis of payment to the miners, and to enact a
system fair alike to employer and miner.

The principal objections of the employers to the run
of mine system adopted in some of the States are: a tend-

ency to produce coal unduly mixed and mingled with slate, sulphur, rock, dirt and other impurities; and to yield an increased quantity of fine coal, to the loss of the employer.

As we have said, the result of the consideration of the objections to this system, by the Commission report, was the enactment of the present law.

Its first section shows that it attempts to substitute for the system theretofore in use in the State, where the terms of employment required payment for mining or loading coal on the basis of the ton or other weight, one by which the miner shall be paid according to the total weight of all the coal contained in the mine car in which the same has been removed from the mine; providing, however, that no greater percentage of slate, sulphur, rock, dirt, or other impurity shall be contained in the contents of such car than that ascertained and determined by the Industrial Commission of Ohio.

By the second section of the act, the Industrial Commission is required to ascertain and determine the percentage of slate, sulphur, rock, dirt, or other impurity *unavoidable* in the proper mining or loading of such cars in the mines of the State. Evidently this section recognized and considered the objections to the plan of payment adopted in the first section, payment by run of mine, and provided for ascertaining by means of the Commission of the percentage of slate, sulphur, rock, dirt or other impurity, which evidently the lawmakers regarded as impracticable to prevent altogether in the mining of coal. In other words, the employer was not obliged to compensate the miner for everything sent up in the car, no matter how loaded with dirt and impurities. The object was to ascertain the amount of unavoidable impurities in proper mining, and place a limitation upon the miner to that extent.

In fixing the penalties for infractions of the act, § 7

penalizes the miner or loader for the contents of a car containing a greater percentage of impurities than that ascertained or determined by the Industrial Commission, and the miner for such infraction is made guilty of a misdemeanor and punishable upon conviction. Section 7 contains the important proviso that nothing contained in the section shall affect the right of a miner or loader and his employer to agree upon deductions by the systems known as docking, on account of such slate, sulphur, rock, dirt, or other impurity.

In other words, the ascertainment of the Industrial Commission which is provided in §§ 1 and 2 is not to be a limitation upon the right of the employer and miner to agree upon deductions of their own arrangement as to the amount of slate, sulphur, rock, dirt or other impurity permitted in the mining of coal. The employer and miner may substitute their own agreement in that respect for the ascertainment of the Commission, and the law fixes no penalty for the mining of coal with such measure of impurities as the employer and miner have thus agreed upon.

Section 3 makes it the duty of the miner and employer to agree upon and fix the percentage of fine coal commonly known as nut, pea, dust and slack allowed in the output of the mines, and where they do not agree, the Industrial Commission may fix such percentage, which percentage thus established shall remain in force until otherwise agreed upon between miner and employer, and the Commission, when it finds the percentage of fine coal as fixed by the Industrial Commission has been exceeded, may make, enter and cause to be enforced such order or orders as will result in reducing the percentage of fine coal to the amount fixed by it.

The report of the Coal Commission (pages 59 and 60) shows the consideration which that body gave to this subject in the interest of fair mining, and its desire to

obviate by this provision the undue production of fine coal to the disadvantage of the employer.

By § 5, the Industrial Commission is given power from time to time upon investigation to change the percentage by it ascertained and determined, or fixed by its previous orders.

The only penalty fixed by the law against the employer is contained in § 6, where it is made unlawful for the employer to pass the coal over a screen or other device, for the purpose of ascertaining and calculating the amount to be paid the miner or loader for mining or loading such contents, whereby the total weight of such contents shall be reduced or diminished.

There is nothing in the law to prevent the employer from screening his coal as he sees fit for other purposes, and so as to fit it for the market, in such wise as he may deem advisable. The inhibition on screening is only upon that operation when it is done for the purpose of calculating the amount to be paid to the miner for mining the coal. Moreover, it is important to be considered in this connection that the orders of the Commission are not final, but are subject to review under the statute of Ohio found in 103 Ohio Laws, at page 95, where the orders of the Commission are declared to be only *prima facie* reasonable, and any employer or other person interested is entitled upon petition to a hearing upon the reasonableness and lawfulness of the order before the Commission, and under § 38 of the law, any employer or other person in interest, being dissatisfied with any order of the Commission, may commence an action in the Supreme Court of Ohio to vacate or amend any such order upon the ground that the same is unreasonable or unlawful, and the Supreme Court is authorized to hear and determine such action and may, in its discretion (§ 41) suspend all or any part of the order of the Commission. The statute makes provision for the prompt hearing of all such actions, in prefer-

ence to other civil cases, with some exceptions. It would seem that this system of law, with a right to review in the manner we have stated in the Supreme Court of Ohio, has provided a system ample for the protection of the rights of the employers (see *Plymouth Coal Co.* v. *Commonwealth of Pennsylvania,* 232 U. S. 531). And of course in this, as in other cases, only alleged infractions of constitutional rights of those complaining can be considered in determining the constitutionality of the law. *Southern Ry.* v. *King,* 217 U. S. 524, 534; *Rosenthal* v. *New York,* 226 U. S. 260, 271; *Jeffrey Mfg. Co.* v. *Blagg,* 235 U. S. 571, 576.

The objection that the law is unconstitutional as unduly abridging the freedom of contract in prescribing the particular method of compensation to be paid by employers to miners for the production of coal was made in the case of *McLean* v. *Arkansas,* 211 U. S. 539, in which this court sustained a law of the State of Arkansas requiring coal mined to be paid for according to the run of mine system according to its weight when brought out of the mine in cars. In that case the constitutional objections founded upon the right of contract which are made here were considered and disposed of. This court has so often affirmed the right of the State in the exercise of its police power to place reasonable restraints like that here involved, upon the freedom of contract that we need only refer to some of the cases in passing. *Schmidinger* v. *Chicago,* 226 U. S. 578; *Chicago &c. R. R.* v. *McGuire,* 219 U. S. 549, and cases therein cited and reviewed.

The contention that this law has no reasonable or legal relation to the object to be attained seems to us to be equally without foundation, in view of the recognized right of the legislature to regulate a business of this character, and to determine for itself, in the absence of arbitrary action, the measure of relief necessary to affect the desired purposes. That the law is within the authority

of the Ohio legislature, acting under the constitution of Ohio, there can be no question, in view of the authority conferred by that instrument in § 36, Art. II, which provides that "laws may be passed . . . to provide for the regulation of methods of mining, weighing, measuring and marketing coal, oil, gas and other minerals."

As to the alleged impracticability of the law, because of the impossibility of the Industrial Commission determining the quantity of dirt and other impurities in any coal mined, we can find no force in that objection. Agreements as to the amount of docking for dirt and impurities in the mining of coal have been constantly made, and it is not the province of a court to revise conclusions which men versed in the business have found practicable, certainly not in advance of an attempt to put the law into operation. The consideration of the law already given shows the means enacted to do away with these impurities, and to insure as far as possible the production of clean coal.

As to the objection because of the penalties, this is not a suit to enforce penalties; nor in view of the provisions of the statute can we say that the penalties are so great as to prevent a resort to the courts to ascertain the constitutionality of the law. *Willcox* v. *Consolidated Gas Co.*, 212 U. S. 19; *Grand Trunk Ry.* v. *Michigan Railroad Commission*, 231 U. S. 457; *Ohio Tax Cases*, 232 U. S. 576.

We are unable to discover in the statute any infraction of the constitutional rights of the appellant, and the order denying the temporary injunction is accordingly

                                                            *Affirmed.*