No. 31,355

THE FARMERS COÖPERATIVE GRAIN AND SUPPLY COMPANY, *Appellant*, v. THE CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY, *Appellee.*

(33 P. 2d 170.)

Opinion filed June 9, 1934.

*Charles W. Steiger, R. O. Mason* and *Frank P. Eresch,* attorneys for appellant state corporation commission.

*Luther Burns* and *J. E. DuMars,* both of Topeka, for the appellee.

The opinion of the court was delivered by

SMITH, J.: This action was instituted before the public service commission. The commission made its order in favor of complainant. The respondent appealed to the district court of Republic county. That court held the order to be bad, and the complainant appeals.

The proceeding was instituted pursuant to the terms of R. S. 66-294. That section is as follows:

"That whenever a disagreement arises between the owner of an elevator or grain warehouse, coal shed, ice house, buying station, flour mill, or any other building used for receiving, storing or manufacturing any article of commerce, transported, or to be transported, situated on a railroad right of way, or on land owned or controlled by a railroad company, and such railroad company as to the terms and conditions on which the same is to be continued thereon or removed therefrom, in every such event on written application to the public utilities commission by such railroad company, person, firm or corporation the said public utilities commission shall have authority, and it is hereby made their duty, as speedily as possible after the filing of such application, to hear and determine such controversy, and make such an order in reference thereto as shall be just and right between the parties under all the facts in the case which shall be enforced as other orders of said commission."

The facts are simple. Narka is a small town in Republic county. It is located on the line of the Rock Island. At the time of the

hearing of this case before the commission there were two elevators located there, both owned by the Farmers Coöperative Grain and Supply Company, the complainant here. One of them was located upon the leases involved in this controversy. Lease A-16656 covered ground with a frontage of 200 feet located upon a side track, with a depth of 90 feet. Lease A-4606 covered ground with a frontage of 65 feet located upon a side track, with a depth of 40 feet; also ground on which an office building is located with a frontage of 20 feet not upon the railroad track, with a depth of 30 feet. These were written, executed leases and were in effect at all times here involved. Lease A-16656, which is the one about which this case turns, was executed September 1, 1927, and provided for an annual rental of $40. The rentals were paid without objection until September 26, 1930, when this complaint was filed. The complaint consisted of a letter from the manager of the elevator to the commission. It stated that the elevator across the street paid less rentals than his elevator and that elevators on the lines of respondent in adjoining towns were paying less. The letter recited that efforts had been made to effect an agreement with the railway company, but to no avail. The railway company answered challenging the jurisdiction of the commission to hear and determine the complaint under R. S. 66-294 on four grounds as follows:

"1. That to grant the relief sought by the complaint would involve the exercise of judicial authority and functions not possessed by the public service commission.

"2. That section 66-294, R. S. 1923, under which this proceeding was instituted, is void in that it proposes and undertakes to confer judicial power and authority upon the public service commission.

"3. That said section 66-294 is void in that it is a restriction upon and an invasion of the rights of this defendant to use and control its property and to make contracts concerning the same at will. This defendant is entitled to exercise its own judgment as to what uses its property shall be put and compensation to be fixed for such use. That said section 66-294, R. S. 1923, is void in that the enforcement of the terms thereof in this case would deprive this defendant of its rights to contract and would impair any contract contrary to the terms of section 10, article 1 of the constitution of the United States.

"4. For the reason that the exercise of the pretended power conferred thereby upon the public service commission would deprive this defendant of its property for the private use of complainant without due process of law in violation of the provisions of section 1 of the 14th amendment of the constitution of the United States."

The commission took jurisdiction, heard the complaint and made the following order:

"It is therefore by the commission ordered: That the charge in the sum of $40 assessed and collected by the defendant as annual rental for the site on which the complainant's property is located at Narka, Kan., under Rock Island lease No. A-16656, is unreasonable, unjust, discriminatory and excessive.

"It is further by the commission ordered: That the charge of $19 assessed and collected by the defendant as annual rental for the site on which the complainant's property is located at Narka, Kan., under Rock Island lease No. A-4606, is unreasonable, unjust, discriminatory and excessive.

"It is further by the commission ordered: That the complainant shall pay as rental of the demised premises occupied under Rock Island lease No. A-16656, a sum equal to six per cent per annum of the fair value of the property used in accordance with the terms and conditions of the opinion filed herein, to wit, $300.

"It is further by the commission ordered: That the complainant shall pay as rental of the demised premises occupied under Rock Island lease No. A-4606, the sum of $12, being six per cent of the fair value of the property, which sum the commission determines at $200, the same being the minimum sum heretofore found reasonable and just in accordance with the terms and conditions of the opinion filed herein.

"By the commission it is so ordered."

The application of respondent for rehearing was denied by the commission. Respondent then filed an application for review in the district court. The same grounds were set out in the application for review that had been relied on in the answer of defendant before the commission.

In addition respondent alleged the leases had been in existence for about four years before the date of the hearing before the commission and were in existence at the time of the hearing; that the commission erred in holding that the elevator, located upon the property covered by the leases, is public, in character, and that it is entirely private in character, is organized for profit and designed to serve the personal ends of the Farmers Coöperative Grain and Supply Company.

The district court heard the appeal and held the order to be unlawful for the following reasons:

"1. That section 66-294, Revised Statutes, 1923, is void, and if enforced by the commission, as provided in its order and decision, will impair and destroy the obligation of existing contracts evidenced by lease A-16656 and lease A-4606, contrary to the terms of section 10, article 1 of the constitution of the United States.

"2. That said section is void in that it purports and undertakes to confer judicial functions, powers and authorities upon the public service commission, thereby usurping the exclusive power and authority of courts as conferred

and vested therein by article 3, section 1, of the constitution of the state of Kansas.

"3. That said section is void in that it is in conflict with and violates the provisions of section 1 of the bill of rights of the constitution of Kansas, which guarantees to all equal inalienable natural rights, among which are life, liberty and pursuit of happiness.

"4. That said section is void in that it is in conflict with and violates the due-process provision of the 5th and 14th amendments to the constitution of the United States, and, if enforced, will deprive the railway company of its property without due process of law and will deny to it the equal protection of the law."

The complainant brings the matter on appeal to this court.

All the constitutional inhibitions that were urged before the commission and the trial court are urged and relied on here. We have concluded that to permit the order to be enforced would be to sanction the impairment of a contract in violation of section 10 of article 1. of the federal constitution.

The two leases were in full force and effect at the time this controversy arose. They both would have been in effect for some time had the present proceedings not intervened. We will concede, but not decide, that the elevator in question was a public utility and that the relationship between the elevator and the railway company was such that it was amenable to regulation by the state through its corporation commission. Still, not every contract between public utilities may be disturbed by the regulatory body of the state. There must be some feature or provision in the contract that hampers or impedes the utility in the performance of its functions toward the public. This question was considered by this court in the case of *Railroad and Light Co. v. Court of Industrial Relations,* 113 Kan. 217, 214 Pac. 797. In that case the court was considering an order of the industrial court that attempted to set aside certain contracts for electric power between a large power company and some of its heavy consumers. This court followed the rule just referred to and refused to set the contract aside. In the opinion this court said:

"Subject to an important exception, which will presently be noted, the contracts in question were protected from impairment by the federal constitution (U. S. Const., art. 1, sec. 10, amendment XIV), and by the Kansas bill of rights, sections 1, 2 and 18, which have been construed to the same general effect. (*Winters v. Myers,* 92 Kan. 414, 421, 140 Pac. 1033; *The State v. Wilson,* 101 Kan. 789, 796, 168 Pac. 679.) The important exception is that if such contracts are prejudicial to or discriminate against the public or other-

wise obstruct the state's authority to make laws and regulations reasonably necessary for the general welfare, they are not exempt from governmental control, but may be abrogated, curtailed or nullified through the reserved police power of the state. (*Atlantic Coast Line v. Goldsboro,* 232 U. S. 548, 58 L. Ed. 721; *Rail Coal Co. v. Ohio Industrial Comm.,* 236 U. S. 338, 59 L. Ed. 607; *Union Dry Goods Co. v. Georgia Pub. Serv. Corp.,* 248 U. S. 372, 63 L. Ed. 309, 9 A. L. R. 1420.) But contracts cannot be waved aside by mere lip service invocation of the police power, 'by simply invoking the convenient apologetics of the police power,' to use the language of Mr. Justice Holmes, in *Kansas Southern Ry. v. Kaw Valley Dist.,* 233 U. S. 75, 79, 58 L. Ed. 857. Before a contract can be interfered with through the police power, it must appear that the contract does in some measure affect adversely the welfare of the public.

" 'If the rates and pressure prescribed at Winfield unduly deplete the revenues of the utility, the other towns supplied by the Wichita Natural Gas Company would have to pay more than they should, or the company would have to go out of business, and all the towns, including Winfield, would be deprived of this public-service commodity.' (*City of Winfield v. Court of Industrial Relations,* 111 Kan. 580, 586-7, 207 Pac. 813.)" (p. 228.)

The authorities cited in that opinion are decisive, and a further discussion of them would add nothing to the force of this opinion. There is no claim that the rental named in the leases under consideration is so high as to have any effect on the business carried on by the elevator company. There are none of the conditions present which this court has heretofore held would so hamper and impede the utility in its work of serving the public as to cause this court to approve the striking down of a contract. A contract must yield to the public good, but to that alone, and in the absence of that feature a contract between two public utility companies is just as sacred as one between other parties. We hold, therefore, that the trial court was correct in ruling that the order of the corporation commission should be set aside.

The judgment of the trial court is affirmed.

HARVEY, J., dissenting.