[Crim. No. 1410.  Second Appellate District, Division One.—February 18, 1927.]

# THE PEOPLE, Respondent, v. JOHN F. KELLEY, Appellant.

[1] CRIMINAL LAW—LARCENY BY "TRICK OR DEVICE"—EMPLOYMENT OF PERSONS BY DEFENDANT—PAYMENT TO DEFENDANT OF "CASH BONDS"—WRITTEN CONTRACTS—ADMISSION OF PAROL EVIDENCE—INTENT.—In a prosecution for grand larceny by "trick and device," where it appeared that defendant and several persons had entered into written contracts whereby defendant agreed to employ such persons, and such persons paid to defendant sums of money as a bond for their positions, which moneys were to be returned to said persons, extrinsic evidence offered for the purpose of showing that the intent of defendant was to trick said persons into delivering money to him, and that the supposed positions and employments were fictitious, was not subject to defendant's objection that the admission of such extrinsic evidence was violative of the rule that oral testimony is not admissible for the purpose of adding to, controverting, or varying the terms of written contracts.

[2] ID.—INTENT — INSTRUCTIONS. — In such prosecution, the given instruction to the effect that to constitute larceny, as set forth in the several counts of the information, there must have existed at the time of the taking a felonious intent on the part of the defendant to permanently deprive the owners of their property, and that if the jury believed from the evidence that the defendant did not so intend, that then it was the duty of the jury to find the defendant not guilty of the crime of grand larceny, was sufficient; and the defendant was not prejudiced by the action of the trial court in striking out from his requested instruction that part thereof which would have instructed the jury that if they believed from the evidence that it was the intent of the defendant to return their property to the owners or to give them an interest in a certain business at their option as provided in the written contracts between the owners and the defendant at the time the property was received, then it would be the duty of the jury to find the defendant not guilty of the crime of grand larceny.

[3] ID.—BELIEF OF DEFENDANT — INTENT — INSTRUCTIONS. — In such prosecution, the trial court did not commit error in refusing to give defendant's requested instruction to the effect that if the jury

---

3. Larceny or embezzlement as affected by belief in right to property taken, note, 41 L. R. A. (N. S.) 549.

believed from the evidence that the defendant took the property in question under an honest belief entertained by him at the time of the taking that he had a legal right to take the property, then the defendant should be found not guilty of the crime of larceny even though he was mistaken in such belief, where the rule invoked by the refused instruction was sufficiently stated in an instruction given by the court that to constitute larceny as set forth in the information, there must have existed at the time of the taking a felonious intent on the part of the defendant to deprive the owners of their property.

[4] ID.—FRAUD—CONTRACTS—EVIDENCE—INTENT— INSTRUCTIONS. — In such prosecution, the trial court properly refused to give an offered instruction which would have been misleading to the jury in that it attempted to incorporate with the theory of an absence of fraud or deception, a statement of the rule under which contracts are ordinarily deemed to express the whole agreement between the parties; and even if such proposed instruction was in all respects a correct statement of the law, the trial court's refusal to give the same was justified by the giving of the instruction that to constitute larceny as set forth in the information, there must have existed at the time of the taking a felonious intent on the part of the defendant to permanently deprive the owners of their property.

[5] ID. — LARCENY BY "TRICK OR DEVICE" — VERDICT — EVIDENCE.—In such prosecution, the evidence was sufficient to support the verdict and bring the case within the definition of larceny "by trick or device."

(1) 16 C. J., p. 746, n. 31.    (2) 16 C. J., p. 1063, n. 85.    (3) 16 C. J., p. 1045, n. 39.    (4) 16 C. J., p. 1063, n. 85.    (5) 36 C. J., p. 912, n. 42.

APPEAL from a judgment of the Superior Court of Los Angeles County and from an order denying a new trial. Arthur Keetch, Judge. Affirmed.

The facts are stated in the opinion of the court.

M. C. Spicer and A. M. Drew for Appellant.

U. S. Webb, Attorney-General, and John L. Flynn, Deputy Attorney-General, for Respondent.

5.   Larceny by trick, notes, 8 Ann. Cas. 287; 26 A. L. R. 381; 1 L. R. A. (N. S.) 862.   See, also, 17 R. C. L. 15.

CONREY, P. J. — Appellant was found guilty on six counts of an information charging grand larceny. The alleged crimes, as shown by the evidence, consisted in the obtaining of money from certain persons through the operation of a trick or device, by means of a fictitious firm, or partnership, for the transaction of a pretended business, in connection with which the victims were induced to yield possession of their money to the defendant.

The principal grounds of appeal as indicated by the briefs are: (1) Errors in admitting testimony to add to, controvert, or vary the terms of certain written instruments; (2) refusal to give three instructions requested by defendant; (3) that the verdict is contrary to law and the evidence in several stated particulars. The nature of the case may be illustrated by the evidence concerning count one, which charged larceny of the sum of $500, belonging to one Agnes Lubeck. On the third day of December, 1925, Mrs. Lubeck executed and delivered to the defendant her check for the sum of $500, which in due course was paid to the defendant. At the same time, she and the defendant executed a contract in writing, the one with the other, reading as follows:

"This agreement made and entered into by and between John F. Kelley and Agnes Lubeck, on the 3d day of December, 1925, witnesseth: That the said John F. Kelley agrees to employ the said Agnes Lubeck at a salary of $150 per month to act as office manager of that certain business known as the Auto Theft Bureau of America. The said Agnes Lubeck hereby agrees to accept the above-mentioned position at the above-mentioned salary, and to execute said position to the best of her ability. The said Agnes Lubeck hereby pays to the said John F. Kelley the sum of Five hundred dollars ($500.00) and the said sum is to be used as a bond until March 1, 1926, when, at that time, it is to be returned to the said Agnes Lubeck in cash or in five shares of the common stock of the Auto Theft Bureau of America at the option of the said Agnes Lubeck. In the event the said Agnes Lubeck takes the amount out in stock, the said Kelley further agrees to buy said stock back again, at the price of one hundred and twenty-five dollars ($125.00) per share.

"(Signed) JOHN F. KELLEY.
"AGNES LUBECK."

The following facts are gleaned from the testimony of Mrs. Lubeck: On or about November 17, 1925, in response to an advertisement in the "Los Angeles Times" offering a partnership in a realty firm, Mrs. Lubeck called on the defendant at his office on Sunset Boulevard, in the city of Los Angeles. Defendant said to her that he wanted to sell a half interest in his realty business, which he said had been in operation some four years and was a well-paying business; that it would require about $1,700. This interview did not lead to any sale of any interest in the business. A few days later, in a telephone conversation, defendant told Mrs. Lubeck that he had disposed of his real estate business, but that he had something else to offer. In response to that suggestion, Mrs. Lubeck called a second time at defendant's office. He asked her if she would like to manage a crew of girls in a new business. He said that they were going to organize a business in connection with an auto theft bureau, and he would like to have her manage a crew of girls in one of the departments. About December 1, 1925, Mrs. Lubeck went to work in the office of this Auto Theft Bureau as manager of the multigraph department. On the 2d or 3d of December defendant said to Mrs. Lubeck that it would require a cash bond for her position, which would be that of general office manager. She replied that she could give him a surety bond. He responded that it would not do; that he did not need the money, but he wanted a cash bond for good faith; that that cash bond would be placed in trust and would not be needed, "and that it would be my option to get it—I could get it back the first of March, in three months time." It was on the basis of these statements made by the defendant, and in reliance thereon, that Mrs. Lubeck paid over to the defendant said sum of $500 and executed the said written contract. The Auto Theft Bureau of America, as described to Mrs. Lubeck by the defendant, was a corporation of which he was president and general manager, which corporation was to engage in the recovery of stolen automobiles in accordance with an elaborately devised scheme for identification of the automobiles of the corporation's customers, and for the detection and recovery of the cars of those customers whenever they should be stolen, and particularly when attempts were made to take such cars to distant places or out of the state. About

81 Cal. App.—26

the 25th of January, 1926, the defendant left Los Angeles, and Mrs. Lubeck did not see him again until he was brought to trial in this action.

Mrs. Lubeck continued her employment in the office of the purported corporation until the second day of February, 1926. She received $75, her pay for the first two weeks. Very early during that period she found that instead of an abundance of money the institution was short of funds. Before defendant left for San Francisco he asked Mrs. Lubeck to pay him another $500, saying that "all of this money would be put in a trust and that there would be an amount of $60,000— . . . That there would always be a certain surplus fund to take care of any deficit in any way, and it could not fail"; that the payment of this additional $500 would be necessary to hold her position further. Fortunately she did not comply with this demand.

Evidence was received showing how the defendant received other sums of money from the several other persons mentioned in the other counts of the indictment. All of the transactions were similar and consisted in obtaining said moneys as "cash bonds," or as "guarantee of good faith" of the victims who were to be honored with positions in the "Auto Theft Bureau of America." For the purpose of showing that the intent of the defendant was to trick the applicants into delivering money to him, and that the supposed positions and employments were fictitious, the prosecution introduced evidence showing the condition of the bank accounts of defendant, and other facts concerning the representations of the defendant, and his transactions in connection with the supposed business. On the basis of all of this evidence (which we have endeavored only briefly to indicate), the defendant was convicted as first herein stated.

[1] Appellant contends that the court erred in admitting oral testimony over appellant's objection for the purpose of adding to, controverting or varying the terms of the several written contracts, one of which has been set forth herein. Appellant seeks to apply in this criminal action the rule commonly applied to civil actions under which extrinsic evidence is not admissible to add to, controvert, or vary the terms of a written instrument. He argues that it was erroneous to admit such extrinsic evidence for the pur-

pose of showing the intent of the defendant in the transactions; that it was erroneous because the intention of the parties to a contract must be gathered from the contract itself when the terms thereof are not ambiguous, and that on such a contract the intent of the parties is a question of law for the court and not a question for the jury to decide. There is no merit in the point stated. "The state is a party to the prosecution but no party to the contract. If the contract when offered by the people is conclusive as against them, it certainly would be a perfect defense if offered by the accused, but it is not possible that the people in the prosecution of a defendant charged with crime can be estopped in any such manner. . . . The defendant's guilt of the offense charged must appear to the jury beyond a reasonable doubt, from all the evidence placed before it, and this contract but bears its part in furnishing light—be that light strong or weak—upon the ultimate fact as to the guilt or innocence of the defendant. The rules of evidence in civil cases as to a direct or collateral attack upon the contract by any of the parties to it are entirely inapplicable to anything involved in this case." (*People* v. *Martin*, 102 Cal. 558, 566 [36 Pac. 952, 953].)

[2] The court struck out from defendant's requested instruction No. 1 that part thereof which would have instructed the jury that if they believed from the evidence that it was the intent of the defendant to return their property to the owners "or to give them an interest in the Auto Theft Bureau of America at their option as is provided in the several written contracts executed between the owners and the said defendant Kelley at the time the property was received," then and in that case, it would be the duty of the jury to find the defendant not guilty of the crime of grand larceny. But the court in the same instruction did state that to constitute larceny, as set forth in the several counts of the information, there must have existed at the time of the taking a felonious intent on the part of the defendant to permanently deprive the owners of their property, and that if the jury believed from the evidence that the defendant did not so intend, that then it was the duty of the jury to find the defendant not guilty of the crime of grand larceny. The instruction as given was amply suffi-

cient, and the defendant was not prejudiced by the modification of which he complains.

[3] The court refused to give defendant's requested instruction No. 2, reading as follows: "If you believe from the evidence that the defendant, Kelley, took the property of the owners mentioned in Counts 1, 2, 3, 4, 5 and 6 of the information under an honest belief entertained by him at the time of the taking that he had a legal right to take the property, then it is your duty under the law, to find the defendant not guilty of the crime of larceny as charged in said counts even though he was mistaken in such belief."

Counsel for the People make no criticism of the instruction itself. The only reply made on behalf of respondent is to the effect that no evidence was introduced in support of defendant's theory that he mistakenly used the money of the complaining witnesses under a claim of right in that they were copartners with him. Respondent contends that for this reason the refusal to give the requested instruction was not prejudicial to the rights of defendant. If the offered instruction had been related to some special or affirmative theory of defense requiring evidence for its support and as to which there was no evidence, it would not have been the duty of the court to give such instruction. But this instruction was properly applicable to the case because it was directed to the very essence of the prosecution's case, which involved an intent to steal, as a part of the felonious taking of property. Assuming that the instruction was correct, the one and only valid reason for the refusal of this instruction—and we deem it a sufficient reason—is that the rule invoked by the instruction is sufficiently stated in the instruction given by the court that to constitute larceny as set forth in the information, there must have existed, at the time of the taking, a felonious intent on the part of the defendant to permanently deprive the owners of their property.

[4] We are further of the opinion that the court's refusal to give the defendant's requested instruction No. 3 would be justified by the giving of the instruction last above mentioned, even if this proposed instruction was in all respects a correct statement of the law. But said offered instruction No. 3 would have been misleading to the jury in that it attempted to incorporate with the theory of an

absence of fraud or deception, a statement of the rule under which written contracts are ordinarily deemed to express the whole agreement between the parties. Under the instructions as given, the jury must have well understood that in the absence of fraud or deception on the part of the defendant he should not be convicted.

[5] Finally, appellant contends that the evidence is not sufficient to sustain the verdict in this, that there is no sufficient evidence to prove that the defendant took the money from the complaining witnesses for his own use or with intent to deprive them, or either of them, of the money which he did take and receive, and that there is no evidence sufficient to support the implied finding that the title to said money remained in the respective owners thereof. We are satisfied that there was evidence sufficient to warrant the jury in believing that the defendant falsely represented to the complaining witness that the Auto Theft Bureau of America was a corporation; that he was president of the corporation; that "cash bonds" were required from the complaining witnesses in order that they might hold executive positions in said corporation, and that the money received would be put in trust as bond money; all of which was false in fact and false in intention of the defendant. The evidence further shows not only that the checks of the complaining witnesses were cashed by the defendant, but there is evidence tending to prove that the moneys so received from the complaining witness were placed by the defendant in his personal bank account, or in an account in the name of the Auto Theft Bureau, for the purpose of being used and which actually were used for purposes other than those indicated in the representations made by the defendant. The evidence was sufficient to establish the fact that the property taken was the property of the complaining witnesses which they intended to leave with the defendant only temporarily and under a promise that it would be returned to them later. The evidence was sufficient as a whole and in its multitude of circumstances to convince a reasonable mind, and beyond a reasonable doubt, that the pretended auto theft bureau and its pretended business were in effect a fictitious organization, with only so much show of reality as was necessary to enable the defendant to fool the trusting individuals from whom by that

means he obtained possession of their money. The case is thus brought within the definition of larceny "by trick or device," as explained in numerous decisions. (*People* v. *Edwards,* 72 Cal. App. 102 [236 Pac. 944].)

The judgment and order are affirmed.

Houser, J., and York, J., concurred.