[Crim. No. 1747.   Third Appellate District.—January 24, 1941.]

THE PEOPLE, Respondent, v. ERNEST DALLAS, Appellant.

Rutherford, Rutherford & Rutherford for Appellant.

Earl Warren, Attorney-General, and J. Q. Brown, Deputy Attorney-General, for Respondent.

THOMPSON, J.—The defendant was convicted on two separate counts of an information. The first one charged him, under section 480 of the Vehicle Code, with failing to stop his automobile, after it was involved in an accident, to

render assistance to a pedestrian who was struck by his machine and instantly killed. The third count charged him with driving his machine on the left side of a roadway at a point less than 100 feet from an intersecting highway, contrary to section 530 (b) 2, of the same code, resulting in the death of the same individual. The defendant was acquitted of the offense of "negligent homicide" as defined in section 500 of that code, with which he was also charged in the second count of the information. He was sentenced to imprisonment in San Quentin state prison for the respective terms prescribed by law, upon each of the offenses of which he was convicted. It was, however, provided that the two sentences should run concurrently. The defendant demurred to each count of the information on the ground that it failed to state a public offense. He also moved to arrest the judgment. His motion for a new trial was denied. From the judgment which was rendered and from the order denying a motion for new trial this appeal was perfected.

It is conceded the evidence supports the charges of the offenses of which the defendant was convicted, but a reversal of the judgment is sought on the ground that each count fails to state a public offense, and that the court erred in instructing the jury.

The notice of appeal was given from the judgment rendered; from the order denying the motion for new trial and from the order denying the motion in arrest of judgment.

The defendant is a married man 27 years of age. At 8 o'clock on the evening of July 21, 1940, he was driving an automobile in a southerly direction at the rate of 40 miles or more an hour, along "Silverado Trail" a highway in Napa County, within 100 feet of its intersection with Spring Street. Seated in the rear seat of his machine was a friend by the name of Cullison, who had been previously convicted of a felony, and a girl sixteen years of age. Another young girl fifteen years of age was seated by the side of the defendant in the front seat. They overtook another machine driven by Melvin Collins, which was traveling ahead of their car·at the rate of about 30 miles an hour. Collins was accompanied by a friend named Drapinski. Just before the accident occurred both occupants of the Collins car saw a man walking in the same direction along the extreme left side of the highway, nearly opposite their machine. Drapinski testified that the

defendant's automobile overtook their car and "shot" by them on to the left side of the highway, traveling at about "twice our speed". He thought that the pedestrian, Giovanni Musanti, was walking along the shoulder of the roadway just beyond the paved portion of the highway. Collins exclaimed, "My God, they are going to hit this man". As the defendant's machine struck the pedestrian, the occupants of the Collins car distinctly heard a "sickening thud" and they saw his body thrown over the hood of defendant's car to the left-hand side, a distance of ten feet or more from the paved portion of the highway.

The speed of the defendant's machine was slackened slightly, but it continued on its course without stopping. Collins and Drapinski followed for a short distance and they procured the number of the defendant's car. They then returned to the scene of the accident and found the body of the deceased lying in the grass several feet from the pavement. Musanti was apparently dead. They immediately drove to Napa and notified the sheriff's officers of the "hit-and-run" accident.

The defendant testified that he was traveling 40 miles an hour when he passed the Collins car, but he claimed that he did not see the pedestrian walking along the left-hand side of the highway. He said that they did feel a dull thud and heard the crashing of glass at the time of the accident and that someone said he wondered what they had hit. But they did not stop their machine until they reached a point at the "Triangle", three blocks beyond the point where the accident occurred. The defendant then turned his car around and drove back to see what his machine had hit, but he claims that they saw no object at that place which they could have struck. He did not stop his machine, but continued to drive about for half an hour. After that they once more returned to the scene of the accident. When they arrived the second time at that point they found two other machines parked there. The defendant then stopped, and he was immediately confronted by Deputy Sheriff Karl Graham, who had been previously notified of the accident by Collins. The body of Musanti lay in the grass sixteen feet from the edge of the concrete pavement. He was dead. The defendant was taken in custody, and he was subsequently charged with the crimes of which he was convicted. The left-hand front lamp of the defendant's machine was broken off and smashed. There

was a large dent in his left front fender.  He claimed he did not see the body of the deceased as it was hurled over the hood of his machine at the time he admits that he felt the bump.

There is an abundance of evidence to support the judgment of conviction of the offenses charged in both the first and the third counts of the information.  There is no doubt the defendant wilfully failed to stop his automobile when the accident occurred, and that he deliberately refrained from attempting to render assistance to Musanti, after he knew that his machine had struck and either injured or killed his victim.  The circumstances which were adduced in evidence warranted the jury in finding that the defendant knew his automobile violently struck a pedestrian at the side of the roadway, and that the victim was probably seriously injured.  Collins and Drapinski, who were riding in the other car, clearly saw the pedestrian walking along the shoulder of the highway.  Drapinski said their car was traveling 30 miles an hour, and that the defendant's machine passed them at nearly twice that rate of speed.  If that be true, the defendant passed the Collins car on the left side of the highway at the rate of 60 miles an hour.  The defendant was evidently paying little attention to the highway along which he was traveling.  He and his male companion were taking two young girls out for a ride.  They had been previously drinking beer, although there is no evidence that any of them were intoxicated.  It is not unreasonable to assume the defendant's attention was diverted from reasonable scrutiny of the highway.  Both Collins and Drapinski saw the accident and clearly observed the body of the deceased hurled over the hood of the defendant's car.  They also heard a "sickening thud" when the pedestrian was struck.  The left front lamp of the defendant's car was broken off and smashed.  His left front fender was badly damaged.  The defendant and all the occupants of his car admitted they felt the thud when the machine came in contact with the body of the pedestrian.  They knew they had struck some object for they twice returned to the scene of the accident, but failed to immediately stop even to ascertain whether assistance was necessary or could be rendered.  It seems impossible that the defendant and his companions could have failed to see the body of the deceased as it was hurled over the hood of their machine.  The force

of the blow, the sound of the contact with the body, the crashing of the lamp and the sight of the form as it was thrown over the hood of their machine to the left side of the highway must have warned them of the nature of the accident.

In this case the jury was specifically instructed, at the request of the defendant, that, unless the evidence proved he knew or by the exercise of reasonable care should have known, his machine struck and either injured or killed a pedestrian, they could not find him guilty of failing to stop his car or of neglecting to offer to render assistance. We are convinced the defendant did know, as every occupant of his machine must have known, that his automobile hit and injured a pedestrian. The jury so found.

■ The defendant's attempt to appeal from the order denying his motion in arrest of judgment was ineffectual. A multitude of authorities holds that no appeal lies from that order. (Sec. 1237, Pen. Code; *People* v. *Martin,* 188 Cal. 281 [205 Pac. 121]; *People* v. *Pettinger,* 94 Cal. App. 297 [271 Pac. 132]; 8 Cal. Jur. 493, sec. 508.)

■ There is no merit in the contention that the first count of the information fails to state a public offense because it does not allege the defendant had knowledge of the fact that his automobile struck and either injured or killed a pedestrian. That count is couched in substantially the language of section 480 of the Vehicle Code. It sufficiently complies with sections 950, 951 and 952 of the Penal Code. It alleges that the defendant's machine, at a specified time and place, was "involved in an accident causing injuries and death to another person, to-wit: Giovanni Musanti" and that the defendant "did *wilfully* fail to immediately stop said motor vehicle . . . and (he wilfully neglected) to render aid as provided in section 482 (a) of the Vehicle Code". The allegation that the defendant "did wilfully fail to stop his car" is equivalent to a statement that he knew his machine had injured or killed a man and that he deliberately refrained from stopping to render aid. That very criticism of an information couched in almost the identical language of this challenged count was determined adversely to this defendant's contention in the case of *People* v. *Odom,* 19 Cal. App. (2d) 641 [66 Pac. (2d) 206]. The demurrer to the first count of the information was properly overruled.

It is immaterial that the demurrer to the second count was overruled, for the defendant was acquitted of that charge.

█ The demurrer to the third count was also properly overruled. That count charged the defendant in substantially the language of section 530 (b) 2 of the Vehicle Code with wilfully driving his automobile at a specified time and place, in passing another machine "on the left side on Silverado Trail, a public highway, within one hundred (100) feet of an intersection, to-wit: The intersection of Spring Street and Silverado Trail", in violation of the section above mentioned, which "unlawful act was the proximate cause of the death of one Giovanni Musanti". It was not necessary to also allege that at the point where the defendant unlawfully drove his machine on to the left side of the highway, his view of the "bridge, viaduct or tunnel" which he was approaching was obstructed. That suggested omission has reference to an entirely different offense contained in the same paragraph. It may be conceded that section is susceptible of the construction placed upon it by the appellant, but we think the legislature intended thereby to prohibit the driving of a vehicle on to the left side of a highway within 100 feet of an intersection, regardless of whether it was hidden from the view of the operator of the car, for the reason that such conduct would increase the hazard of a collision with some other machine which might be approaching around the corner on the same side of the highway. The portion of the designated section which is applicable to count three of the information reads as follows:

"(b) No vehicle shall at any time be driven to the left side of the roadway . . . 2 . . . when approaching within one hundred feet of or when traversing any intersection or railroad grade crossing."

█ The preceding offense has reference to the approach of intersecting highways. It has no reference to the approach of a "bridge, viaduct or tunnel". It is not necessary that the view of the intersection shall be obstructed in order to constitute an offense by driving the vehicle on to the left side of the highway.

█ The charge of wilfully and unlawfully violating that statute constituted an allegation of negligent operation of the automobile. Since it is also alleged that the negligent manner of driving the machine proximately resulted in the killing of

Giovanni Musanti, it constituted a charge of "negligent homicide" as that crime is defined in section 500 of the Vehicle Code.

The defendant may not complain that he was convicted of two counts of an information, each of which is based upon the same facts resulting in the death of an individual, since in pronouncing judgment the court determined that the sentences under each count should run concurrently. (*People* v. *Anderson,* 75 Cal. App. 365, 371 [242 Pac. 906]; *People* v. *Sharp,* 58 Cal. App. 637 [209 Pac. 266].)

The defendant's term of imprisonment is not extended by virtue of the fact that both offenses grow out of the same facts. Nor would the term of his sentence be affected even though he was wrongfully convicted of the offense charged in the third count. The conviction of the offense charged in the first count is sufficient upon which to uphold the sentence which was pronounced against the defendant. There was no prejudicial error in overruling the demurrer to the several counts of the information.

The defendant has challenged as erroneous seventeen of the twenty-eight instructions which were given to the jury at the request of the prosecution. He has also challenged three instructions offered by himself which were modified by the court. We have carefully examined each instruction in view of the asserted errors. It would be an unwarranted task to attempt to analyze each separate instruction. It is true that some of the instructions are not prepared with the skill which might have been exercised. The fact that the defendant was being tried on three separate offenses at the same time created a more difficult task in drawing instructions applicable to each count, which, nevertheless, should be free from criticism. After carefully reading the entire charge we are of the opinion the jury was very fully and fairly charged, and that it was not misled by any of the challenged instructions. We are of the opinion that any inaccuracies which the charge may contain do not constitute reversible error.

Even though certain instructions, with respect to the third count, may be considered erroneous provided the appellant's theory that section 530 (b) 2 makes it unlawful to drive on the left side of a roadway within 100 feet of an intersection only when that intersection is hidden from the driver's

view, still the verdict of conviction of the offense charged in the first count is valid, and the judgment should not be reversed on that account. The record does not disclose a miscarriage of justice in convicting the defendant of the offenses with which he was charged. Even though it be deemed that some of the instructions are erroneous, they do not constitute reversible error in view of article VI, section 4½, of the Constitution.

Conceding that section 480 of the Vehicle Code, read in connection with section 482 (a) of the same code, defines two separate offenses, namely, (1) failing to ''immediately stop such vehicle at the scene of such accident'', and, (2) neglecting to ''render to any person injured in such accident reasonable assistance'', it was not error under the circumstances of this case for the court to fail in its instructions to distinguish between those two offenses. The evidence is uncontradicted that the defendant neglected to immediately stop his car at the scene of the accident, in spite of the fact that there is an abundance of evidence to show he had knowledge, or as a reasonable person should have had knowledge, that his machine struck and injured a pedestrian. The victim of that accident was found dead by the roadside within half an hour of the time of the accident. There is no evidence that he was not instantly killed. The defendant concedes that Musanti was instantly killed. The record of this case leaves no room to assert that any or all of the jurors may have concluded the defendant failed to render necessary aid to an injured man. Since he was dead, it may be conceded no assistance could have been given to him. It may therefore not be reasonably said the verdict is void because the jurors may not have all agreed upon the defendant's guilt of the same offense. Under the uncontradicted evidence in this case we are bound to assume the jurors all agreed that he was guilty on the first count of failure to stop his machine after striking a pedestrian so as to enable him to ascertain whether he had killed or merely injured a human being, and whether he could render assistance to the stricken man. There is no substantial merit in the criticism of the instructions.

If the defendant is correct in asserting that it is unlawful under section 530 (b) 2 of the Vehicle Code only when the operator of an automobile drives on ''the left side of the roadway'' within 100 feet of an intersection *when the*

*driver's view of the intersection is obstructed,* and that the verdict on the third count is therefore void because there is no evidence that the intersection was not visible within 100 feet, that fact would not alter the judgment of conviction of the first count of the information for failure to stop his car and offer to render assistance to his victim. The sentences on both counts run concurrently. The invalidity of the verdict on the third count is ineffectual to reverse the judgment which is perfectly valid as to the first count. There is no uncertainty regarding the guilt of the defendant of the offense charged in the first count. All jurors united in finding him guilty on both the first and the third counts. Judgment on the first count should be affirmed regardless of whether the verdict on the third count be deemed valid or invalid. We think both convictions are valid. The motion for new trial was properly denied.

The judgment and the order are affirmed.

Pullen, P. J., and Tuttle, J., concurred.

A petition for a rehearing was denied February 8, 1941.