[Crim. No. 5743.   Second Dist., Div. Two.   Dec. 12, 1956.]

THE PEOPLE, Respondent, v. BERNARD G. KEEFER, Appellant.

Max Solomon for Appellant.

Edmund G. Brown, Attorney General, and William E. James, Deputy Attorney General, for Respondent.

ASHBURN, J.—Convicted on three counts of violation of section 405, Labor Code, after a nonjury trial, defendant was sentenced on each count to prison for the term prescribed by law, the sentences to run concurrently. He appeals from the judgment and order denying his motion for new trial. The only claim to reversal is alleged insufficiency of the evidence.

Sections 405 and 406, Labor Code, read: "§ 405. *Property bond: Use of Property: Contract not to abrogate provisions: Misappropriation: Punishment.* Any property put up by any employee or applicant as a bond shall not be used for any purpose other than liquidating accounts between the employer and employee or for return to the employee or applicant and shall be held in trust for this purpose and not mingled with the property of the employer. No contract between the employer and employee or applicant shall abrogate the provisions of this section. Any employer or prospective employer, or agent or officer thereof, who misappropriates any such property, mingles it with his own, or uses it for any other purpose than that herein set forth is guilty of theft and shall be punished in accordance with the provisions of the Penal Code relating to theft." "§ 406. *Same: Property deemed put up as bond.* Any property put up by an employee, or applicant as a part of the contract of employment, directly or indirectly, shall be deemed to be put up as a bond and is subject to the provisions of this article whether the property is put up on a note or as a loan or an investment and regardless of the wording of the agreement under which it is put up."

Both sections relate to an employee or an applicant for employment, persons who are afforded this special protection because of their inferior status in the matter of bargaining for employment or fixing the terms of same. (*People* v. *McEntyre,* 32 Cal.App.2d Supp. 752, 755 [84 P.2d 560].) Counsel agree that the test of applicability of the statute to the facts at bar depends upon the existence or an application for a relationship of employer and employee within the common law concept and measured by its standards. Such is the basis of discussion of the merits of *People* v. *McEntyre, supra,* and *People* v. *Pond,* 44 Cal.2d 665, 675 [284 P.2d 793].

The law provides that any property put up by the employee or applicant "as a part of the contract of employment, directly or indirectly," constitutes a "bond," "regardless of the wording of the agreement under which it is put up." (§ 406.) Also, that "no contract between the employer and employee or applicant shall abrogate the provisions" of section 405 requiring that any such property shall be held in trust for the purpose of liquidating accounts between employer and employee, or for return to the employee or applicant. Misappropriation, mingling, or use for any other purpose is punishable as a theft. All of this applies to the

applicant for a job as well as one whose status has been established.

The information charges employment and prospective employment in each instance and the judgment of guilty rests upon this basic finding. Unless the evidence establishes as a matter of law that there was no employment or application for employment the judgment must be affirmed. To warrant reversal "it must be made clearly to appear that upon no hypothesis whatever is there sufficient substantial evidence to support the conclusion reached in the court below," and "we must assume in favor of the verdict the existence of every fact which the jury could have reasonably deduced from the evidence, and then determine whether such facts are sufficient to support the verdict." (*People* v. *Newland*, 15 Cal.2d 678, 681 [104 P.2d 778].)

■ It appears without conflict that the money received from each of defendant's victims was not held in trust, that it was deposited in defendant's own bank account which was joint with one or more of his relatives, and that it was used for purposes other than those specified in section 405. Applying the rules of the Newland case, *supra*, rejecting all evidence opposed to the finding and adopting all inferences favorable to it, we find the judgment well supported.

Defendant's claim is that there was no employment and no application for employment; that each person named in the information leased from him certain vending machines for sanitary napkins, paying him a sum of money for the concession for a specified period. Obviously, this version of the facts was rejected by the trial judge.

One of defendant's victims was Miss Blanche M. Chadsey (count II). She read an advertisement which defendant had inserted in the Los Angeles Examiner of February 13, 1956 as follows: "LADY, 40 TO 65 ROUTE MANAGER for lite, pleasant outside supervisory position. Up to 30 hrs. weekly. Earn $5 hr. to start. Must have reliable car. Send application to National Sanitary Napkin Service, Box M8609 Exam." Standing alone, the phrases "Route Manager," "supervisory position," "earn $5 hr. to start," connote employment and nothing else, especially as the advertisement appeared in the column, "Help wanted, female." Miss Chadsey contacted defendant and he called upon her, showed her some pictures of the napkins, told her she would have to put up a bond as she would handle money and stock,—$500 if she worked two days a week, or $1,000 if she worked 25 hours

a week; that she would service machines already installed in department stores and she would receive information later as to the location and would be shown what to do; that her time would be her own except that she would have to get to the stores before they closed; her compensation was to be 70¢ on each dollar taken out of the machines; she was to turn over the money to defendant once a month; he would guarantee her $100 a week regardless of what the machines took in; he also said that any of them which did not produce one dollar a day would be re-located by him; there was no talk about her buying machines or leasing any machine or route until after defendant got her money. He drove her to the bank on that day, February 14, 1956, refusing to take a check. She withdrew $1,000 in cash and handed it to him in the automobile where he was waiting for her; thereupon he gave her a receipt reading: "Feb. 15 1956 RECEIVED of Blanche Chadsey One thousand and oo/100 Dollars for 3 year lease on locations and eqpt. Free Stock to Start—Expires March 1959. $1,000. National Sanitary Service B Keefer." Miss Chadsey did not read it until after she was at home; then she understood the language and concluded something was wrong. On that same day she went to the Better Business Bureau where she was told that defendant was a fake; thence to the Bunko Squad of the Police Department, and finally to the district attorney. On the same evening, the 14th, defendant telephoned her that twenty machines were being sent her from Chicago. She said she had no idea of buying any machines and he replied that that was true, and "I hold a receipt that you have leased the machines." On cross-examination she testified: "Q. And just from reading this receipt, you knew that you were leasing this machines and routes for three years; isn't that right? A. Well, I didn't know what this—because it was never discussed at that time that I remember. On Tuesday morning there was nothing mentioned about any lease and I didn't know what it was. I had no idea I was buying any machines and that I was going to service my own machines. Because he had—I was given to understand that I was servicing these machines that were downtown in Los Angeles and that they were in filling stations all over Los Angeles." The victim never saw defendant after she delivered the money, and had no further conversations with him. Of course she never received the return of her $1,000, or any part of it.

A lease not having been mentioned before Miss Chadsey paid her money to defendant, she being then an applicant for employment, the receipt could not affect the fact that her money, when put up, was a bond within the meaning of the statute. The giving and acceptance of the receipt thereafter could not change its status, which remained a bond "regardless of the wording of the agreement under which it is [was] put up."

The facts above related leave little room for any finding except that Miss Chadsey was an applicant for employment and that she and defendant actually agreed upon an employment. That is a question of fact, of course, unless the evidence is not susceptible of opposing inferences. (*Sudduth* v. *California Emp. Stab. Com.*, 130 Cal.App.2d 304, 311 [278 P.2d 946]; *Isenberg* v. *California Emp. Stab. Com.*, 30 Cal.2d 34, 39 [180 P.2d 11].)

In *Empire Star Mines Co.* v. *California Emp. Com.*, 28 Cal.2d 33, 43 [168 P.2d 686] (as in many other cases), it is said that in determining the question of employee or independent contractor "the most important factor is the right to control the manner and means of accomplishing the result desired. If the employer has the authority to exercise complete control, whether or not that right is exercised with respect to all details, an employer-employee relationship exists." Again, "[o]ther factors to be taken into consideration are (a) whether or not the one performing services is engaged in a distinct occupation or business; (b) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the principal or by a specialist without supervision; (c) the skill required in the particular occupation; (d) whether the principal or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work; (e) the length of time for which the services are to be performed; (f) the method of payment, whether by the time or by the job; (g) whether or not the work is a part of the regular business of the principal; and (h) whether or not the parties believe they are creating the relationship of employer-employee. (Rest., Agency, § 220; Cal.Ann., § 220.)" (To the same effect, see *Tomlin* v. *California Emp. Com.*, 30 Cal.2d 118 [180 P.2d 342]; *Bemis* v. *People*, 109 Cal.App.2d 253, 263 [240 P.2d 638]; *Sudduth* v. *California Emp. Stab. Com.*, *supra*, 130 Cal.App.2d 304, 311; *Bevan* v. *California Emp. Stab. Com.*, 139 Cal.App.2d 668, 681 [294 P.2d 524].)

When the court rejected, as it was authorized to do, the testimony of a lease agreement, there was practically nothing left to point to any inference other than employment. Miss Chadsey was not engaged in a distinct occupation or business of her own, but in that of defendant; he furnished the instrumentalities and places of work; they were not even known to Miss Chadsey until after her money was paid over; he was free to change locations of machines at any time; hers was not the work of a specialist in any sense, not one requiring any skill; no length of time of service was required; the applicant plainly believed she was to become an employee protecting the employer with a cash bond; she was to be paid a commission (which in itself is not determinative in either direction). Defendant had not only the control of the manner and means of accomplishing the desired result, but also the details, most of which were withheld from Miss Chadsey. Finally, the money being a guarantee of faithful performance and not the purchase price of a lease of territory or machines, there was no impediment to his discharging her at any time and disposing of the $1,000 in the manner required by the statute. The finding of the employment of Miss Chadsey and a violation of section 405, Labor Code, is well supported by the evidence.

The same considerations uphold the finding of guilt in the instances of Mrs. Bessie Ann Stratton (count I), and Mrs. Helen F. Landsberg (count III). The facts are of a pattern with the Chadsey transaction.

As the sentences were made to run concurrently and a single judgment was entered, insufficiency of the evidence to establish guilt on Counts I and III (if such there had been) could not work a reversal,—acquittal of those charges could not reduce the term of imprisonment and therefore no prejudice could be suffered by defendant. (See *People* v. *O'Keefe*, 54 Cal.App. 649, 651 [202 P. 476]; *People* v. *Giambone*, 119 Cal.App.2d 338, 341 [259 P.2d 10]; *People* v. *Dallas*, 42 Cal. App.2d 596, 604 [109 P.2d 409]; *People* v. *Pearson*, 41 Cal. App.2d 614, 618 [107 P.2d 463]; *People* v. *McWilliams*, 87 Cal.App.2d 550, 552 [197 P.2d 216]; *People* v. *Bean*, 88 Cal. App.2d 34, 41 [198 P.2d 379]; *People* v. *Anderson*, 75 Cal. App. 365, 371 [242 P. 906].) However, we have carefully examined the evidence pertaining to each of those counts and find the same sufficient to support the conviction on each.

Judgment and order denying new trial affirmed.

Moore, P. J., and Fox, J., concurred.